# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-16

ANGELO BRACEY

VERSUS

CITY OF ALEXANDRIA

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2
PARISH OF RAPIDES, NO. 11-04410
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## PHYLLIS M. KEATY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**Gremillion, J., concurs in part and dissents in part and assigns written reasons.**

**AFFIRMED.**

**Lewis O. Lauve, Jr.**
**Bussey & Lauve, LLC**
**Post Office Box 8778**
**Alexandria, Louisiana 71306-1778**
**(318) 449-1937**
**Counsel for Defendant/Appellant:**
    **City of Alexandria**

**Malcolm X. Larvadain**
**Attorney at Law**
**626 Eighth Street**
**Alexandria, Louisiana  71301**
**(318) 445-3533**
**Counsel for Plaintiff/Appellee:**
**Angelo Bracey**

**KEATY, Judge.**

Employer appeals from a judgment rendered by the worker's compensation judge (WCJ) in favor of former employee. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On April 21, 2010, Angelo Bracey (Bracey) filed a 1008 Disputed Claim for Compensation (1008) against his employer, the City of Alexandria (the City), seeking medical treatment pursuant to the Louisiana Workers' Compensation Act (LWCA), La.R.S. 23:1021-1415, for injuries that he sustained in a workplace accident on May 22, 2009, while he was employed by the City as a firefighter. Therein, he contended that he injured his right leg and hip when he stepped into a hole while cutting grass with a push lawn-mower at the fire station. He alleged that no medical treatment had been authorized, and he sought authorization for an MRI arthrogram that had been recommended by Dr. Daniel Oas. In an amended 1008 filed on May 21, 2010, Bracey sought an award of statutory penalties and attorney fees. Bracey filed a separate 1008 on June 14, 2011, seeking authorization to be seen by Dr. Brett Cascio, an orthopedist specializing in hip injuries, for the injuries he sustained in the May 22, 2009 workplace accident. On August 8, 2011, the WCJ signed an order consolidating the two actions for trial purposes. The matters were tried on May 23, 2012. At trial, the parties stipulated that Bracey was a City employee on the date of the alleged accident and that the maximum compensation rate would apply if Bracey were awarded workers' compensation benefits. On July 24, 2012, the WCJ issued an oral ruling in favor of Bracey awarding him Temporary Total Disability Benefits (TTDs); ordering the City to pay for Bracey's continued care for his right labrum tear by Dr. Cascio; awarding Bracey a $2,000 penalty for the City's failure to authorize further

medical care for his injury; awarding Bracey $2,000 in penalties for the City's failure to recognize the validity of his claim; awarding Bracey $7,500 in attorney fees; and assessing the City with all costs and ordering interest to run on all sums from the date they were due. Written judgment was signed on October 17, 2012.

The City now appeals, asserting that the trial court erred: 1) in finding that Bracey established by a preponderance of the evidence that he sustained a work-related injury that made him in need of medical care and unable to work for the City; 2) in finding that Bracey proved that the work-related accident had caused a torn labrum in his right hip; 3) in finding that Bracey established by clear and convincing evidence his entitlement to TTDs; and 4) in assessing it with penalties and attorney fees. Bracey has answered the appeal seeking an additional award of attorney fees to cover the cost of having to defend the appeal.

## DISCUSSION

### *Work-Related Accident*

A worker bringing a compensation action against his employer bears the burden of proving, as a threshold requirement, that he suffered "personal injury by accident arising out of and in the course of his employment." *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357, 360 (La.1992); La.R.S. 23:1031(A). The word "accident" as used in La.R.S. 23:1031 is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1).

Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dep't of Corrections*, 93-1305 (La.2/28/94); 633

2

So.2d 129. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State*, 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Id.* Thus, ''if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'' *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

*Foster v. Rabalais Masonry, Inc.*, 01-1394, pp. 2-3 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied*, 02-1164 (La. 6/14/02), 818 So.2d 784.

"The determination of coverage is a subjective one in that each case must be decided from all of its particular facts." *Jackson v. Am. Ins. Co.*, 404 So.2d 218, 220 (La.1981). "[T]he manifest error standard of appellate review applies in workers compensation cases and great deference is accorded to the [workers' compensation judge's] factual findings and reasonable evaluations of credibility." *Central Lumber Co. v. Duhon*, 03-620, p. 3 (La.App. 3 Cir. 11/12/03), 860 So.2d 591, 593, *writ denied*, 04-315 (La. 4/2/04), 869 So.2d 880 (quoting *Garner v. Sheats & Frazier*, 95-39, p. 7 (La.App. 3 Cir. 7/5/95), 663 So.2d 57, 61).

Bracey testified that while mowing the grass at the fire station on the morning of May 22, 2009, he stepped into a hole and injured his right hip when he turned to get out of the hole. Within minutes of the accident, he told his supervisor, Captain Charles Lane, that he had been injured. He and Captain Lane filled out an accident report, and he was sent to Dr. Gordon Webb, a physician specializing in occupational and emergency medicine. Dr. Webb diagnosed him with a strained right bicep femorous. He told Bracey not to work and scheduled a follow-up appointment for May 29, 2009. At that visit, Bracey still had complaints of leg pain, so Dr. Webb ordered him to remain off work until June 8, 2009. When

Bracey returned to Dr. Webb's office on June 5, 2009, he was released to return to work, effective June 8, 2009, although he still had complaints of leg pain which he described as "one" on a scale of one to ten. Bracey last saw Dr. Webb in conjunction with the injuries he sustained in the May 22 work-place accident on June 23, 2009. At that time, he again reported right leg pain of "one" on a scale of one to ten. Bracey also reported having increased pain across his right hip since recently jumping off the tailgate of his truck. According to Dr. Webb's notes from that visit, Dr. Webb believed that this pain represented a new problem, not work related, as Bracey had not previously had pain across his hip joint.

Bracey was scheduled to work twenty shifts of twenty-four hours each between June 9 through August 6, 2009, after which he had a scheduled vacation until September 11, 2009. He worked eleven of those shifts and "laid off" the remaining nine. Bracing testified that "laying off" meant getting someone else to cover a shift. He stated that shifts could not be "laid off" due to illness or injury and that any shifts missed for those reasons "would be coded as 'sick time' or 'workers' comp.'" When Bracey returned from vacation, he worked six shifts and "laid off" another two shifts.

Beginning on October 13, 2009, Bracey was off work while treating with psychiatrist Dr. Edwin Urbi for issues/depression stemming from his wife's disclosure of infidelity. Dr. Urbi released Bracey from his care and cleared him to return to work on January 7, 2010. On that date, Bracey was seen by Dr. Robert Rush, a board certified physician in the field of occupation medicine, for injuries he sustained to his neck and back in a non-work-related automobile accident on November 28, 2009. Bracey never complained of hip pain to Dr. Urbi. While he also did not initially complain to Dr. Rush about any hip pain, on January 12, 2010,

4

he complained to physical therapist Oday Lavergne that he had "pain in the right lower extremity especially in the right anterior groin," leading Lavergne to recommend that Bracey undergo an MRI arthrogram to assess the cause of his pain.

Thereafter, Bracey requested that the City send him to Dr. Dan Oas, a specialist in orthopaedic and sports medicine. Dr. Oas first saw Bracey on March 17, 2010. After examining Bracey, Dr. Oas believed that he had a torn right labrum, given the type of symptoms he was having and the length of time that those symptoms had lasted. At that time, Dr. Oas recommended that Bracey undergo an MRI arthrogram of his right hip along with a contemporaneous therapeutic injection to enable him to ascertain a better diagnosis of the cause of his hip pain. According to Andy Storer, an adjuster for the City, further treatment related to the right hip was denied because he believed that those complaints were related to the November 2009 automobile accident rather than Bracey's May 2009 work accident. Bracey continued treatment with Dr. Oas using his private health insurance, and on September 29, 2010, he received the recommended MRI arthrogram and injection to his right hip. The MRI report noted that it was "suspicious for [a] right sided labral tear." In early October 2010, Bracey returned to Dr. Oas and reported that his symptoms had improved and he wanted to return to work.

The testimony revealed that before allowing Bracey to resume his employment, the City sent him back to Dr. Webb for a return-to-work examination. On October 29, 2010, after reviewing the MRI report and examining Bracey, Dr. Webb issued a report opining that Bracey's labrum tear made it "exceedingly unlikely that [he] will be able to perform his full duties as a fireman and that there

5

is a high risk of injury to himself which could result in serious injury or death to himself of others should this occur at a critical moment."

Throughout the time applicable to this matter, Bracey had check-ups at the Veteran's Affairs Medical Center in Alexandria (the VA) as a result of his having served in the Iraq War as a member of the United States Air Force. During a routinely scheduled visit on May 27, 2009, Bracey reported that he had been experiencing right hip pain since stepping in hole while mowing grass at work several days prior.

The City contends that the WCJ committed manifest error when it found that Bracey proved that he suffered an injury that made him in need of medical care and unable to work because Bracey returned to work at full duty on June 8, 2009, without complaint, and without the need for additional medical care until he was involved in a non-work-related automobile accident on November 28, 2009. Thus, while it concedes in its appellant brief that Bracey did suffer a work-related accident that resulted in his being temporarily disabled due to a strain of his bicep femorous muscle, the City emphatically denies that the accident caused the torn labrum which prevents him from returning to his job as a firefighter for the City.

Bracey counters that the City's analysis oversimplifies the evidence and Bracey's actual physical injuries. Bracey submits that when Dr. Webb released him to full duty on June 8, 2009, he was still suffering from right leg pain which he described as one out of ten, which never disappeared, and which increased when he put weight on his right leg and turned. He also points to Dr. Webb's deposition testimony wherein he stated that: 1) it can be difficult to pinpoint the exact cause of hip pain and that doctors often have to take a "wait-and-see" approach, and 2)

typically, if hip pain resolves quickly it was due to a strain, but if the pain lingers, it was due to a more serious condition.

Bracey also refers this court to the deposition testimony of Dr. Rush wherein he stated that hip injuries such as a torn labrum can easily be missed and are difficult to diagnose. Bracey further points to Dr. Rush's opinion that while the automobile accident that Bracey was involved in on November 28, 2009 may have aggravated his torn labrum, it did not cause the tear given Bracey's physical condition and complaints when he examined Bracey on January 7, 2010. Bracey asks this court to consider Dr. Rush's belief that the cervical and lumbar strains Bracey sustained in the automobile accident could have masked his torn labrum until those more acute injuries had resolved.

Finally, Bracey submits that he was a credible witness, that the medical evidence supports his claim, and that he carried his burden of proving that he suffered injuries in a work-related accident that render him incapable of returning to work as a firefighter for the City.

In its oral reasons, the WCJ found that Bracey proved by a preponderance of the evidence "that he had an incident that involved him sustaining an injury that made him in need of medical care and made him incapable of working for the City." The WCJ stated that he based this finding primarily on the Alexandria Fire Department Accident Report, which was completed minutes after the accident, along with the Supervisor's Accident Investigation Report prepared by Captain Lane later that day, and the Employer Report of Injury/Illness that the City filed with the Office of Workers' Compensation on May 26, 2009. Each of those reports indicated that Bracey had stepped into a hole or low spot while mowing grass at the fire station. In two of the reports, it was noted that Bracey hurt his

7

right hip when he turned. In the third, Captain Lane wrote that Bracey's groin area was hurting after the accident. The WCJ also noted that on the date of the accident, the fire department sent Bracey to Dr. Webb who after examining Bracey, diagnosed him with a bicep femorous muscle strain of the right leg, which caused pain from behind his right knee, along the bicep and up into the buttock and hip.

After having reviewed the testimony and evidence, we cannot say that the WCJ committed manifest error in finding that Bracey was injured in a work-related accident that made him in need of medical care and unable to return to his former job with the City, especially in light of the results of the MRI arthrogram which showed that he likely had a labrum tear in his right hip and Captain Lane's testimony that even though Bracey worked as a driver, any injured firefighter had to be 100% to return to work should he be pressed into full duty to fight a fire. There is no merit to the City's first assignment of error.

### *Causation of Torn Labrum*

The City insists that there is an absence of definitive expert testimony to support the WCJ's finding that Bracey's torn labrum was caused by his work-related accident. It submits that Bracey's hip injury was more likely caused by his November 2009 automobile accident, given that he did not voice any complaints of hip or groin pain to Dr. Urbi when he was being treated for depression at the end of 2009. Bracey disagrees, arguing that he voiced a right hip injury on the date of the accident and several days later to his physicians at the VA, long before he was involved in the automobile accident which the City points to as the cause of his hip injury.

In its reasons for judgment, the WCJ stated that the medical evidence successfully rebutted the City's claim that Bracey did not experience any hip or

groin pain until long after his work-related accident. The WCJ made particular reference to a note in Bracey's records from the VA dated May 27, 2009, less than a week after the lawn mower accident, wherein Bracey described having pain in his hip that increased when he twisted in a certain way.

After review of the record, we cannot say that the WCJ's conclusion that Bracey's torn labrum was caused by his May 2009 work injury was clearly wrong. The City's second assignment of error is without merit.

### *Entitlement to TTDs*

The City posits that the WCJ erred in finding that Bracey proved his entitlement to TTDs as the facts show that he was able to return to work and earn his full salary, without complaint and without the need for additional medical treatment until after being involved in a non-work-related automobile accident six months after the lawn mower incident at work. Bracey counters that the evidence supports his claims. He concedes that he may not have effectively communicated his initial symptoms to Dr. Webb, and he again points to the testimony indicating that hip injuries can be difficult to explain and diagnose. Finally, Bracey submits that he was a credible witness and that the City failed to offer any evidence that would tend to cast any suspicion on the reliability of his testimony.

"The issue of disability within the framework of the workers' compensation law is a legal rather than a purely medical determination. The issue of disability is determined with reference to the totality of the evidence, including both lay and medical testimony." *Green v. Nat'l Oilwell Varco*, 10-1041, p. 13 (La.App. 3 Cir. 4/27/11), 63 So.3d 354, 363 (citations omitted) (quoting *Odom v. Kinder Nursing Home*, 06-1442, p. 5 (La.App. 3 Cir. 4/25/07), 956 So.2d 128, 132).

9

The WCJ concluded that Bracey established his entitlement to TTDs by clear and convincing evidence. In so concluding, the WCJ noted Dr. Webb's opinion that Bracey's labrum tear made him "incapable of performing the job functions of a driver or fire personnel" for the City. Given our affirmation of the WCJ's finding that Bracey's work-related accident was the cause of his torn labrum, we cannot say that the WCJ manifestly erred in concluding that Bracey proved his entitlement to TTDs. There is no merit to the City's third assignment of error.

## *Penalties and Attorney Fees*

> Louisiana Revised Statutes 23:1201 is the relevant statute in determining whether an employer should be assessed penalties and attorney fees for failure to timely pay indemnity or medical benefits. The statute provides that no penalties or attorney fees shall be assessed "if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer . . . had no control. La.R.S. 23:1201(F)(2). Further, "[t]o avoid the imposition of penalties and attorney fees for the nonpayment of benefits, the employer has a continuing obligation to investigate, to assemble, and to assess factual information before denying benefits." *Romero v. Northrop–Grumman*, 01-24, pp. 10-11 (La.App. 3 Cir. 5/30/01), 787 So.2d 1149, 1156, *writ denied*, 01-1937 (La.10/26/01), 799 So.2d 1144.

> > An employer avoids the imposition of penalties and attorney's fees by satisfying its continuing obligation to investigate, assemble, and assess factual information prior to it denying benefits. Furthermore, the decision to award penalties and attorney's fees is factual in nature and will not be reversed on appeal absent manifest error.

> *Odom* [*v. Kinder Nursing Home*], 956 So.2d at 141-42 (citations omitted). "The purpose of imposition of penalties and attorney fees is to discourage indifference and undesirable conduct by employers and insurers." *Burns v. Interstate Brands Corp.*, 09-705, p. 7 (La.App. 3 Cir. 2/3/10), 30 So.3d 271, 277.

*Green*, 63 So.3d at 364.

While the City asserts that the WCJ erred in awarding Bracey penalties and attorney fees, it fails to offer any support for its assertion, instead merely offering the conclusory statement that the WCJ erred in finding that it acted arbitrarily and/or capriciously in the handling of Bracey's claim. Bracey counters that the WCJ did not manifestly err in finding that the City failed to reasonably controvert his claim for surgery and other medical benefits, noting that the WCJ found him to be credible.

In awarding Bracey penalties and attorney fees, the WCJ found that given the fact that records from the VA Medical Center showed that Bracey had complained of sharp right hip pain on a May 27, 2009 visit, the City's continued resistance to recognize the validity of Bracey's claim that his right hip pain was attributable to his May 2009 work accident and its failure to authorize further medical care for Bracey's hip injury was arbitrary and capricious.

After having reviewed the testimony and evidence, we cannot say that the WCJ committed manifest error in finding that Bracey had proved his entitlement to penalties and attorney fees. The City's final assignment of error has no merit.

### *Bracey's Answer to Appeal*

Bracey answered the City's appeal to request that it be awarded additional attorney fees for work done on appeal. In *Nash v. Aecom Technology Corp.*, 07-990, p. 8 (La.App. 3 Cir. 2/6/08), 976 So.2d 263, 268, this court held that "[a] workers' compensation claimant is entitled to an increase in attorney fees to reflect additional time incurred in defending an employer/insurer's unsuccessful appeal." We award Bracey additional attorney fees of $4,000 for the costs associated with having to defend this appeal.

**DECREE**

The judgment rendered by the workers' compensation judge in favor of Angelo Bracey is affirmed in its entirety. Bracey is awarded additional attorney fees of $4,000 for work performed on this appeal. All costs of this appeal are assessed against the City of Alexandria.

**AFFIRMED.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-16

ANGELO BRACEY

VERSUS

CITY OF ALEXANDRIA

**GREMILLION, J., concurs in part and dissents in part and assigns written reasons.**

I agree with my colleagues that the primary issue is whether Mr. Bracey injured his right hip as a result of the unwitnessed May 22, 2009 accident wherein he allegedly stepped in a hole. In my view, the weight of the evidence suggests that he did not.

I find that the weight of the evidence suggests that he sustained a minor strain to a muscle in his right leg, resulting in only missing a few weeks from work and minimal pain.

Further, I find that the weight of the evidence indicates that the right hip injury was caused by a separate, unrelated incident wherein Mr. Bracey jumped from a truck in June 2009 or an unrelated automobile accident that occurred in November 2009 or a combination of those two unrelated incidents.

Nevertheless, it is also true that Mr. Bracey did tangentially reference his right hip in a visit to Dr. Gordon Webb shortly after the subject work-related accident and again when he made an unrelated visit to the V.A. Medical Center about a week after the work-related accident.

This evidence, in my opinion, does not rise to the level of a preponderance. It does, however, fit within the broad bounds of the manifest error of review. Thus, I agree with my colleagues that there is no basis in this record to reverse the

workers' compensation court with regard to its conclusion that Mr. Bracey was disabled as a result of this accident. I, therefore, join my colleagues in affirming that portion of the trial court's ruling.

However, I respectfully disagree with the majority's decision to affirm the penalties and attorney fees. In addition to the fact that the weight of the evidence suggested that Mr. Bracey did not injure his right hip in the subject work-related accident, there is also specific evidence in this record indicating that Mr. Bracey denied a hip injury altogether. And, there is evidence that a medical care provider specifically determined that the right hip injury was caused by an unrelated accident. Thus, I find that the employer reasonably controverted Mr. Bracey's assertion that his right hip was injured in the subject work-related accident. I would, therefore, reverse the workers' compensation court's award of penalties and attorney fees.