NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-250

ANGELO BRACEY

VERSUS

ALEXANDRIA MUNICIPAL FIRE & POLICE CIVIL SERVICE BOARD,
ET AL.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 242,156
HONORABLE HARRY F. RANDOW, DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Shannon J.
Gremillion, Judges.

AFFIRMED.

**Kelvin G. Sanders**
**P.O. Box 13922**
**Alexandria, LA 71301-8305**
**(318) 487-0009**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Angelo Bracey**

**Steven M. Oxenhandler**
**Michael J. O'Shee**
**Gold, Weems, Bruser, Sues & Rundell**
**Post Office Box 6118**
**Alexandria, LA 71307**
**(318) 445-6471**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **City of Alexandria**

**Brian D. Cespiva**
**711 Washington Street**
**Alexandria, LA 71301**
**(318) 448-0905**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Alexandria Municipal Fire & Police Civil Service Board**

**PETERS, J.**

The plaintiff, Angelo Bracey, appeals a trial court judgment affirming the decision of the Alexandria Municipal Fire and Police Civil Service Board ("the Board") which upheld the action of the City of Alexandria, Louisiana ("the City") in terminating his employment with the Alexandria Fire Department ("AFD"). For the follow reasons, we affirm the trial court judgment in all respects.

## DISCUSSION OF THE RECORD

As a fire equipment operator for the Alexandria Fire Department, Mr. Bracey was an employee under classified service on December 1, 2010. On that day, the City forwarded him a letter informing him that effective December 3, 2010, he would no longer be employed as a member of the AFD based on the fact that he had exhausted over fifty-two weeks of sick leave. Mr. Bracey appealed this decision to the Board.

The evidence presented to the Board at the May 25, 2011 hearing included Mr. Bracey's testimony, stipulations regarding the testimony of others, and twelve exhibits. The litigants further stipulated that Mr. Bracey had drawn medical leave benefits for fifty-seven weeks, but that during that entire time, one or more physicians were of the opinion that he could not return to full-time employment with the AFD. After considering the evidence presented, the Board voted unanimously to uphold the action of the City in terminating Mr. Bracey's employment.

Mr. Bracey then appealed the Board's decision to the Ninth Judicial District Court (hereinafter referred to as the "district court") pursuant to La.R.S. 33:2501(E). After oral argument on June 9, 2014, the district court rejected Mr. Bracey's appeal. In doing so, the district court affirmed the Board's finding that

the City acted in good faith and for cause in terminating Mr. Bracey's employment with the AFD.

The district court executed a judgment to this effect on June 11, 2014, and thereafter, Mr. Bracey perfected this appeal wherein he asserts one assignment of error:

> The [district] court erred by affirming the decision of the City of Alexandria Fire and Police Civil Service Board's action sustaining the termination of appellant by the appointing authority after its violation of the exclusive, compulsory, and obligatory provisions of LSA R.S. 23:1034 thereby compelling appellant to exhaust sick leave benefits pursuant [to] LSA R.S. 33:1995[.]

## OPINION

The right of a classified service employee to appeal any adverse decision of the Board to the district court is provided by La.R.S. 33:2501(E)(1). After the transcript of the Board's action is filed, the district court must "hear and determine the appeal in a summary manner." La.R.S. 33:2501(E)(2). Additionally, "[t]his hearing shall be confined to the determination of whether the decision made by the board was made in good faith for cause under the provisions of this Part." La.R.S. 33:2501(E)(3).

> If made in good faith and statutory cause, a decision of the civil service board cannot be disturbed on judicial review. Good faith does not occur if the appointing authority acted arbitrarily or capriciously, or as the result of prejudice or political expediency. Arbitrary or capricious means the lack of a rational basis for the action taken. The district court should accord deference to a civil service board's factual conclusions and must not overturn them unless they are manifestly erroneous. Likewise, the intermediate appellate court and our review of a civil service board's findings of fact are limited. Those findings are entitled to the same weight as findings of fact made by a trial court and are not to be overturned in the absence of manifest error.

*Moore v. Ware*, 01-3341, pp. 7-8 (La. 2/25/03), 839 So.2d 940, 945-46 (citations omitted).

2

With regard to the issue of sick pay, La.R.S. 33:1995 provides in pertinent part that "[e]very fireman in the employ of a municipality . . . shall be entitled to full pay during sickness or incapacity not brought about by his own negligence or culpable indiscretion for a period of not less than fifty-two weeks." Additionally, La.R.S. 33:1995.1 provides that the amount paid to a fireman pursuant to La.R.S. 33:1995 "shall have such pay decreased by the amount of worker's compensation benefits actually received by the employee." These statutory provisions are incorporated into the written AFD Rules and Regulations.

In the December 1, 2010 dismissal letter, the City set forth the basis for its decision in the first paragraph by first noting that "it is necessary to preserve the ability of the [AFD] to equip and staff the AFD with a sufficient amount of firefighters in order to protect the citizens, residents, and visitors of and to the [City]." Concerning Mr. Bracey's specific situation, the paragraph further noted:

> For over the past year, you have used all of your statutorily granted 52 weeks of sick leave, been granted additional leave under the Family and Medical Leave Act (the "FMLA") and, now, additional leave – all paid by the City. Even after over almost 14 months, however, you are not fully recuperated and cannot return to work without risking significant injury to yourself and/or others. Because you have exhausted all sick leave provided to you under La. Rev. Stat. 33:1995 and used all 12 weeks of leave under the FMLA, you are hereby discharged from employment with the City.

The letter then recited the history of Mr. Bracey's physical situation, noting that he took sick leave based on mental stress from October 13, 2009, through January 4, 2010; took extended sick leave after January 4, 2010, based on injuries sustained in a November 2009 automobile accident; and never returned to work thereafter. During this entire time, Mr. Bracey never produced a doctor's release for him to return to work. The letter further pointed out that the City had sent Mr. Bracey a November 17, 2010 pre-disciplinary letter which provided him with the

opportunity for a preliminary hearing before formal action would be taken. A preliminary hearing was held on November 17, 2010, and the dismissal letter summarized the preliminary hearing as follows:

> Afterwards, you attended the Hearing and stated you were largely free from pain in your hip but never stated you were fully recovered or fully recuperated. The torn labrum in your right hip has not been surgically repaired. You stated you were ready to return-to-work; however, you request the City to return you to the position of Fire Equipment Operator on the basis of receiving pain-relieving injections without the torn labrum in your right hip being repaired. In short, you have not fully recuperated from your right hip injury and, according to Dr. Webb, pose a direct threat to yourself or others. You are, therefore, unable to perform the essential functions of a Fire Equipment Operator. The City cannot be placed in a position of risking further injury to you or others, even if you supposedly can't always feel the pain associated with your right hip labrum tear. Just because you may be largely free of pain, you will continue to exacerbate your injury – simply put, you are not completely recuperated as is required to return to work, and your return-to-work would pose a direct threat to yourself or others, including firefighters and/or civilians.

The City concluded in the letter that based on a fitness report issued by Dr. Gordon L. Webb, an Alexandria, Louisiana occupational medicine specialist, Mr. Bracey had been found unfit for duty as a fireman.

On December 15, 2010, Mr. Bracey sought review by the Board of the City's decision. The Board originally set a hearing for April 20, 2011, but that hearing was continued at Mr. Bracey's request. He sought the continuance because on April 19, 2011, he filed an application with the Firefighters' Retirement System for disability retirement effective January of 2010. The basis of his claim for disability retirement was that he sustained a torn labrum "while cutting grass at work." In his retirement application form, Mr. Bracey described the degree of physical exertion required in the performance of his duties with the AFD as "STRENUOUS." Additionally, in the application block requesting a list of the job duties he could no longer perform, Mr. Bracey listed, "ALL."

4

The hearing before the Board ultimately took place on May 25, 2011. At the hearing, Mr. Bracey testified that his physical and mental problems actually began in May of 2009,[1] and not October of that year. He asserted that on May 22, 2009, he injured his right leg and hip when he stepped in a hole while cutting grass at the fire station to which he was assigned. He testified that Dr. Webb initially diagnosed his injury as that of a strained right biceps femoris and found him to be unable to return to his duties with the AFD. He acknowledged, however, that on June 5, 2009, Dr. Webb released him to return to work effective June 8, 2009. On June 23, 2009, Mr. Bracey returned to Dr. Webb with complaints of a new and more severe pain across his right hip that had grown worse after he recently jumped off the tailgate of a truck. Given the history provided him, the doctor concluded that these new complaints were not related to the May 22, 2009 work-related injury.

Mr. Bracey began receiving paid sick leave on October 13, 2009, after he began treatment for stress and depression with Dr. Edwin Urbi, an Alexandria, Louisiana psychiatrist. He acknowledged at the Board hearing that the stress did not arise from his employment situation, but was related to existing marital difficulties. By January 7, 2010, Dr. Urbi was of the opinion that the stress issues had been resolved, and he released Mr. Bracey to return to work. However, at that time, Mr. Bracey was suffering from injuries he sustained in a November 28, 2009 automobile accident.

---

[1] In a separate proceeding filed in the Office of Workers' Compensation on April 10, 2010, Mr. Bracey sought workers' compensation benefits for the injuries sustained in this accident. After a July 24, 2012 trial, the Workers' Compensation Judge awarded Mr. Bracey temporary total disability benefits, penalties, and attorney fees. The City appealed and a separate panel of this court affirmed that judgment (with one judge dissenting in part). *Bracey v. City of Alexandria*, 13-16 (La.App. 3 Cir. 6/5/13), 115 So.3d 1211, *writ denied*, 13-1934 (La. 11/8/13), 125 So.3d 455. Thus, although the workers' compensation claim was pending when the Board rendered its May 25, 2011 decision, it had not gone to trial.

Mr. Bracey did not return to work on January 7, 2010. Instead, he came under the care of another Alexandria, Louisiana physician, Dr. Robert Rush, for the injuries he sustained in the automobile accident. Dr. Rush, who is a family practitioner, provided Mr. Bracey with medical excuses to remain off work through the last time he saw his patient on March 25, 2010.

Eight days before his last appointment with Dr. Rush, Mr. Bracey began treatment under Dr. Daniel Oas, an Alexandria, Louisiana orthopedic surgeon. According to Mr. Bracey, Dr. Oas's initial diagnosis was that of a torn right labrum in the right hip, but the doctor wanted to obtain an MRI to confirm or discount this diagnosis. Mr. Bracey finally underwent an MRI on September 29, 2010, and the test confirmed Dr. Oas's initial diagnosis. Mr. Bracey testified that he delayed the MRI procedure from its initial scheduling date in March of 2010, because he concluded that it should be paid for as a workers' compensation expense and not through his City health insurance plan.[2]

The one report from Dr. Oas in the record is dated December 16, 2010, and reads as follows:

> **ASSESSMENT:** Right hip labral tear MRI confirmed but essentially asymptomatic.
>
> **RECOMMENDATIONS/PLAN:** I told the patient he can go back to work as tolerated, and release was given. Paperwork was filled out today. Return to see me on a p.r.n. basis.
>
> **PROGRESS NOTE:** The patient is a 44-year-old male who is here today after last being seen on October 5, 2010. We retuned him to work at this time. He apparently saw Dr. Webb, the city doctor, who said he needed surgery and could not go back to work unless he had surgery. He is here today telling me his hip really does not bother him. Since he had that steroid injection in his hip, he is feeling a lot better. He really only notices the pain every once in a while. It is not every day. It is not with every activity, and it is only periodic. He says he is very happy, and he wishes to go back to work. He tells me that his

---

[2] Mr. Bracey had health insurance provided by the City at that time which would have covered the procedure.

lawyer is telling him to have the surgery as well. At this time, I do not recommend any surgery for the patient because he is not symptomatic enough to benefit from any kind of surgery on his hip.

**PHYSICAL EXAM:** Examination of the hip shows really no impingement sign. He walks without any kind of limp or Trendelenburg gait. He has no numbness or tingling in the toes. No atrophy of the thigh or calf muscles. He can do a 1-legged stance and walk down the hall with no Trendelenburg gait.

While Mr. Bracey suggested to Dr. Oas that Dr. Webb, as the City's doctor, would not allow him to return to work without the hip surgery, Dr. Webb's report, originating from an October 29, 2010 examination of Mr. Bracey, suggests otherwise. In that report, which is the report relied on by the City in finding Mr. Bracey unfit for duty, Dr. Webb asserted that Mr. Bracey informed him that Dr. Oas was recommending the surgery. At the same time, Dr. Webb noted that Mr. Bracey also told him that a week after the MRI, Dr. Oas "gave him a full release to return to work[,]" and that he (Mr. Bracey) "feels that he is ready to return to work full duty with no restrictions." However, after reviewing the records available to him and examining the patient, Dr. Webb concluded as follows:

1. The MRI report is that Mr. Bracey has a torn labrum of his right hip and Mr. Bracey tells me that he was informed by Dr. Oas that he would need surgery.

2. Although Mr. Bracey tells me that Dr. Oas told him that he could return to his full duties I have not been able to obtain any records from Dr. Oas since 8/31/10 nor do I have a work release from Dr. Oas.

3. With a torn labrum I believe that it is exceedingly unlikely that Mr. Bracey will be able to perform his full duties as a fireman and that there is a high risk of injury to himself which could result in serious injury or death to himself or others should this occur at a critical moment.

Dr. Webb's report also includes a hand-written November 4, 2010 progress report, which reached the same conclusion that "[w]ith a torn labrum" Mr. Bracey could not perform his duties as a fireman.

7

Mr. Bracey's argument attempts to incorporate the provisions of the workers' compensation law to establish that the district court erred in upholding the Board's decision. Specifically, he argues that La.R.S. 23:1034 somehow precludes the City from dismissing him from employment pending the outcome of his workers' compensation claim.

Mr. Bracey argues on appeal that but for the City's arbitrary and capricious refusal to provide him workers' compensation benefits for the injury he sustained on May 22, 2009, he would not have exhausted his sick leave. In making this argument, he relies on the exclusive remedy language of La.R.S. 23:1032 (made applicable to employees of public bodies by La.R.S. 23:1034) which relates to the liability of an employer for a compensable injury, sickness or disease. La.R.S. 23:1032(A).

We find no merit in this argument, as we find nothing in that exclusivity of remedies language which prevents an injured employee from recovering other benefits not contingent on the facts of the accident, sickness or disease as those events relate to employment. There exists no requirement that the sick-leave benefits received by any employee for an accident, illness, or disease be job related. All that is required for the employee to receive full pay for fifty-two weeks after being unable to work is that the "sickness or incapacity" giving rise to his inability to work is "not brought about by his own negligence or culpable indiscretion[.]"[3] La.R.S. 33:1995. The only limitation to receiving sick leave benefits in a workers' compensation related situation is that the employee's sick leave is reduced by any workers' compensation benefits he might receive. La.R.S. 33:1995.1.

---

[3] The issue of Mr. Bracey's "negligence or culpable indiscretion" in causing his injury has not been raised by the City. Therefore, that issue is not before us.

Mr. Bracey's ability to receive sick leave benefits regardless of the nature of his accident or injury is a statutorily created benefit not available to the average employee injured on the job. Additionally, La.R.S. 33:1995 provides him job security for one year as he attempts to recover from his injury. Nothing in the classified service rules applicable to Mr. Bracey requires that the City hold his position open indefinitely, and we are left only with the issues of good faith and cause. La.R.S. 33:2501(E)(3).

With regard to the duties of a firefighter with the AFD, Mr. Bracey testified that he was familiar with the content of the City's exhibit setting forth those duties, and he acknowledged that fulfillment of those duties required walking, running, jumping, climbing, crawling, lifting, and carrying heavy items. He further testified that with accommodations provided by injections and prescription medicines, he could return to work.

Despite this assurance from Mr. Bracey, the Board was also left with the medical evidence provided by Drs. Webb and Oas. Dr. Webb was of the opinion that Mr. Bracey could not perform his duties as a fireman while suffering from a torn labrum, and Dr. Oas suggested that he could return to work "as tolerated." Dr. Webb asserted in his report that Mr. Bracey told him Dr. Oas would not release him to return to work without surgery, and Dr. Oas's report suggests that Mr. Bracey informed him that as the City's doctor, Dr. Webb would not release him to return to work until after surgery was performed. This, coupled with Mr. Bracey's assertions in his application for disability retirement, make his testimony, concerning his ability to perform his duties as a fireman, suspect.

We find no merit in Mr. Bracey's assignment of error. The Board took evidence, considered that evidence, and ruled based upon its findings. Implicit in

its ruling was a finding of good faith and cause on the part of the City. As did the district court, we find no manifest error in the factual determinations made by the Board or its finding of good faith and cause on the part of the City.

## DISPOSITION

For the foregoing reasons, we affirm the district court's judgment upholding the decision of the Alexandria Municipal Fire and Police Civil Service Board, which upheld the decision of the City of Alexandria, terminating Angelo Bracey's employment with the Alexandria Fire Department. We assess all costs of this appeal to Angelo Bracey.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.