# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-554


**EVRIN S. FORD**

**VERSUS**

**BECHTEL O.G.C. CONSTRUCTION SERVICES, INC., ET AL.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – District # 3
PARISH OF CALCASIEU, NO. 14-05558
CHARLOTTE A. L. BUSHNELL, WORKERS COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

**JOHN E. CONERY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and John E. Conery, Judges.


**AFFIRMED.**

**James J. Hautot, Jr.**
**Judice & Adley**
**Post Office Drawer 51769**
**Lafayette, Louisisana  70505-1769**
**(337) 235-2405**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Bechtel O.G.C. Construction Services, Inc.**
    **Insurance Company of The State of Pennsylvania c/o AIG Claims, Inc.**

**Mark Zimmerman**
**Attorney at Law**
**840 West Bayou Pines Drive, Suite B**
**Lake Charles, Louisiana  70601**
**(337) 474-1644**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Evrin S. Ford**

**CONERY, Judge.**

Bechtel O.G.C. Construction Services, Inc. (Bechtel) and its insurer, Insurance Company of The State of Pennsylvania c/o AIG Claims, Inc. (AIG) (referred to hereafter as Defendants, unless otherwise stated), appeal the judgment of the workers' compensation judge (WCJ) in favor of Evrin S. Ford, who was formerly employed by Bechtel as a journeyman materials handler. Mrs. Ford answers the appeal seeking attorney fees for work done on appeal. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

Mrs. Ford filed a 1008 Disputed Claim for Compensation, commonly referred to as a Form 1008, pursuant to La.R.S. 23:1034.2(F)(1) on August 19, 2014, against Defendants for "Penalties and attorney fees, and in addition, claimant is entitled to any medical and indemnity benefits possibly allowed in her claim. Futhermore, claimant also seeks interest on all awards with all costs of this action to be assessed against the defendant."

Mrs. Ford claimed that on July 12, 2014, she suffered an injury to her lower back while in the course and scope of her employment with Bechtel. Mrs. Ford described the accident and injury in the Form 1008 as, "[C]laimant did repetitive bending and lifting of 15-20 lbs. for 8 hrs. Claimant felt soreness in back that evening. On 7/13/2014 claimant woke-up to extreme pain in back and could not move." Dr. Clark A. Gunderson was designated as Mrs. Ford's "Choice of Physician."

Defendants answered Mrs. Ford's claim for compensation on September 12, 2014, and denied that Mrs. Ford "sustained an injury, resulting in compensable disability out of and in the course of employment, on or about the date stated in her

claim for compensation," despite admitting that she was an employee of Bechtel and was performing services in the course of her employment on the date of the alleged injury. Defendants further denied that Mrs. Ford sustained personal injury by "accident" arising out of employment with Bechtal and while she performed services in the course of employment. Defendants' briefing to this court relied on the definition of "*accident*" as defined in La.R.S. 23:1021(1) in denying Mrs. Ford's claim for benefits

The matter was tried befor the WCJ on January 13, 2016, and taken under advisement. The WCJ allowed the parties to file post-trial memoranda and on March 31, 2016, issued its judgment, followed by oral reasons for judgment on April 20, 2016. The WCJ found in the court's March 31, 2016 judgment that on July 12, 2014, Mrs. Ford, "had a work related accident during the course and scope of her employment with Bechtel," she was entited to temporary total disability (TTD) benefits of $619.00 per week, as well as all reasonable and necessary medical benefits, including Dr. Gunderson's recommendation for a return visit and physical therapy. Further, Mrs. Ford was entitled to penalties of $2,000.00 for Defendants' failure to pay indemity benefits, $2000.00 for Defendants' failure to pay medical benefits, and attorney fees in the amount of $12,000.00. Defendants were also assessed costs in the amount of $352.00, and ordered to pay judicial interest on all awards. It is from the March 31, 2016 judgment of the WCJ that Defendants appeal.

**ASSIGNMENTS OF ERROR**

Defendants assign the following assignments of error on appeal:

1. The Trial Court erred as a matter of law, in finding that the appellee had proved compensable personal injury by accident arising out of and in the course of her employment, where the

2

appellee did not identify any precipitous event or acute onset of symptoms while the appellee was at work; appellee's acute onset of the symptoms which caused her to seek medical treatment occurred at home.

2. The Trial Court erred in ordering appellants to authorize physical therapy and other treatment recommended by appellee's choice of orthopedic surgeon, where there is no evidence that the procedure required by La.R.S. 23:1203.1 and implementing regulations was attempted.

3. The Trial Court erred in awarding penalties and attorney's (sic) fees, where the defendants had a reasonable basis -- appellee's own admissions under oath, among other things -- to contest the claim.

## LAW AND DISCUSSION

### *Standard of Review*

We recently discussed the standard of review to be utilized in workers' compensation cases in *LeBlanc v. Wal-Mart Stores, Inc.*, 15-558, p. 10-11 (La.App. 3 Cir. 11/4/15), 117 So.3d 1125, 1132-33, noting:

> The standard of review in a workers' compensation claim is well established and was succinctly stated in *Bracey v. City of Alexandria*, 13-16, pp. 2-3 (La.App. 3 Cir. 6/5/13), 115 So.3d 1211, 1214–15, *writ denied*, 13-1934 (La.11/8/13), 125 So.3d 455 (quoting *Foster v. Rabalais Masonry, Inc.*, 01-1394, pp. 2-3 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied*, 02-1164 (La.6/14/02), 818 So.2d 784):
>
> > Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dep't. of Corrections*, 93-1305 (La.2/28/94); 633 So.2d 129. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State*, 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Id.* Thus, "if the [factfinder's] findings are reasonable in light of the record

3

reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

"The determination of coverage is a subjective one in that each case must be decided from all of its particular facts." *Jackson v. Am. Ins. Co.*, 404 So.2d 218, 220 (La.1981). "[T]he manifest error standard of appellate review applies in workers compensation cases and great deference is accorded to the [workers' compensation judge's] factual findings and reasonable evaluations of credibility." *Central Lumber Co. v. Duhon*, 03-620, p. 3 (La.App. 3 Cir. 11/12/03), 860 So.2d 591, 593, *writ denied*, 04-315 (quoting *Garner v. Sheats & Frazier*, 95-39, p. 7 (La.App. 3 Cir. 7/5/95), 663 So.2d 57, 61)

### *Mrs. Ford's Acute Onset of Symptoms Occurred at Home*

In their first assignment of error, Defendants argue that the trial court erred in finding that Mrs. Ford's injury to her back occurred in the course and scope of her employment. They urge that the acute onset of her symptoms of pain from her lower back radiating into her left leg occurred when she attempted to get out of the recliner in her home on the evening of July 12, 2014.

Mrs. Ford is a fifty-three-year-old female. At the time of her alleged work accident on July 12, 2014, she had passed a physical test for the job of journeyman materials handler prior to her employment with Bechtel beginning on January 8, 2014. The pre-employment test included several physical tasks, which required the "lifting of objects, and climbing up and down a few stairs with an object in your hand weighing about 30 pounds or so."

Mrs. Ford testified that her overtime job duties on Saturday July 12, 2014, included "massive bolt relocation." Many trucks came to the job site that day and offloaded pallets which contained boxes of materials. Mrs. Ford was required to remove the boxes from the pallets, place the boxes on a table, and verify the

contents so that the inventoried materials could be transported between two separate warehouses. Mrs. Ford testified that she moved a large number of boxes ranging in weight from fifteen to twenty pounds. The pace and physical exertion required of the workers that Saturday was confirmed in the testimony of Ms. Tamera Rooks, Mrs. Ford's supervisor. She testified that the estimated weight of some of the boxes was up to fifty pounds, and that she was sure that Mrs. Ford had carried at least some of the boxes weighing fifty pounds that day. Mrs. Ford further testified that the work that day was "very, very, high based physical wise. Yes, we did as much that day as we probably do in a whole week."

Ms. Rooks explained that there was "a lot going on at that particular time. We had a large bolt relocation going on. We had a lot of large gaskets that were coming in that were in huge crates that required a lot of bending, a lot of squatting, a lot of lifting." Mrs. Rooks testified that she remembered that Mrs. Ford told her she had general soreness and specifically had back soreness that day, but did not report any shooting pain down her legs. Ms. Rooks told Mrs. Ford to take it easy, however the volume of work required that Mrs. Ford work the full day. Ms. Rooks further testified that Mrs. Ford had never come to her with a complaint of soreness or back pain prior to July 12, 2014.

Mrs. Ford finished out the work day, but claimed she was sore and exhausted when she arrived home. She informed her husband she was worn out, took a shower, and got into her recliner. She was unable to engage in the families' usual Saturday night cooking activities, which included grilling outside. She rested in her recliner, and when she attempted to get up from the recliner, she felt sharp shooting pains in her back and down her left leg.

Mrs. Ford's back pain continued to increase on Sunday, July 13, 2014, and

on Monday, July 14, 2014, her husband took her to the emergency room at the Victory Medical Center (Victory) in Beaumont, Texas. Mrs. Ford texted Ms. Rooks on the same day stating that she would not be in to work, could hardly get out of bed, and was going to the hospital. Mrs. Ford has not returned to work since July 12, 2014.

Mrs. Ford was examined in the Victory Emergency Room by Dr. Sidney Marchand. Testimony presented at trial documented Dr. Marchand's findings under the heading "HPI[.]" The findings stated that the "chief complaint" was "pain to: back" with "onset/duration" being "1 day ago" due to "recent injury possibly from . . . lifting, turning/bending for work - journeyman for construction company." In response to the question where the injury took place, the word "work" is circled. Mrs. Ford further testified in connection with her examination by Dr. Marchand that she was having sharp pains going down her left leg, like "hot needles going all the way down." After his examination Dr. Marchand ordered a CT scan and prescribed medication which included Toradol, 60 mg, Morphine, 4 mg, and Flexeril, 10 mg.

Mrs. Ford also testified about Question 4 of the documentation filled out and signed by her husband, Richard Ford, at Victory. In Mr. Ford's response to the question, "Is the hospital care and treatment which you are seeking from Victory Medical Center, at this time, for injuries you suffered during an accident which occurred while you were on the job?" Mr. Ford responded "No[.]"

Mr. Ford testified that the lady at the counter helped him fill out the documents, as Mrs. Ford was already in the back of the emergency room with the doctor. Mrs. Ford confirmed that she was in the examining room with the doctor and had no knowledge of Mr. Ford's responses to any of the questions posed in the

Victory documents. When the E.R. nurse asked Mr. Ford if Mrs. Ford's injury was a work related accident, he responded:

> I told her the truth. I'm not sure. . . . I know she came home later on and she was sore. . . . I was telling that lady I'm not sure. I don't know whether she came home -- all I know, when she came home her back was hurting and they had her back there and I wasn't in a position to ask her anything about it.

A few days later, on July 17, 2014, Mrs. Ford again saw Dr. Stanley Marchand, this time in his office at Beaumont Dermatology and Family Practice. Dr. Marchand was Mrs. Ford's primary care physician. The CT scan ordered by Dr. Marchand was also performed on July 17, 2014 at Christus - St. Elizabeth. However, Dr. Marchand declined to continue treating Mrs. Ford as Dr. Marchand did not see patients for work related injuries.

On July 14, 2014, the day Mrs. Ford reported her back pain to Ms. Rooks by text, Mrs. Rooks did not inform her supervisor, Mr. Norsworthy, of Mrs. Ford's injury claim. The WC-1007 Form entitled "Employer Report of Injury/Illness" states that Bechtel first learned of Mrs. Ford's possible injury on July 30, 2014. However, the WC-1007 Form further indicates under the question "Place of Injury-Employer's Premises? X Yes."

After the supervisors at Bechtel learned of the possible work related injury to Mrs. Ford, Ms. Rooks testified that she was questioned about the incident by Mr. Norsworthy at the behest of Mr. Lance Mitchener, who is involved with safety. She repeated her previous account of the heavy lifting and bending that day and Mrs. Ford's complaints of back pain while on the job, but was told by Mr. Norsworthy not to discuss Mrs. Ford's possible workers' compensation claim with her or inquire about her condition. Ms. Rooks followed the instructions of her

supervisor, despite the fact that she and Mrs. Ford had worked together in the past on other construction jobs and were occasional social friends.

On July 31, 2014, Mrs. Ford was referred by her employer to Dr. Louis F. Puig at Occupational Medical Care. Dr. Puig's Work Status Report dated July 31, 2014, has a stated diagnosis of "Low back pain, DJD, bulging disc . . . etiology unknown[.]" Dr. Puig stated in his Work Status Report, dated July 31, 2014, that Ms. Ford was able to return to work, but with the following restrictions: zero pounds lifting or pushing/pulling, restricted reaching above the chest, overhead and away from the body, restricted walking, standing, and sitting. Dr. Puig noted: Referred to Specialist: "Neuro Surgery - MRI." Mrs. Ford also received six physical therapy treatments at Occupational Medical Care, which did not relieve her pain.

Mrs. Ford returned for a follow up visit with Dr. Puig on August 5, 2014, and reported she was still in a lot of pain with a pain scale of eight out of ten. Dr. Puig's Work Status Report dated August 5, 2014, has a stated diagnosis of "L-5 sprain back pain, DJD, lumbar spurs[.]" Dr. Puig determined Mrs. Ford was able to return to work with the following restrictions: lifting ten to fifteen pounds maximum, restricted walking and standing, not continual, and no crawling, kneeling, squatting, or climbing of ladders. The Medical Referral Form of August 5, 2014, contains the same restrictions, and Dr. Puig certified that Mrs. Ford was able to work a regular forty-eight hour week, but could not work overtime in excess of the forty-eight hour week.

The records of Occupational Medical Care, contained within the records submitted into evidence at trial by Dr. Gunderson's office, indicated that Mrs. Ford saw Dr. Puig again on August 21, 2014. Dr. Puig's Work Status Report dated

August 21, 2014, has a stated diagnosis of "low back pain & herniated disc (L4-L5)[.]" Dr. Puig determined Mrs. Ford was able to return to work with the following restrictions: zero pounds lifting and pushing and pulling, restricted walking and standing, and primary sitting duties with occasional walking/standing. Based on the Dr. Puig's work restrictions, if Mrs. Ford had returned to work, she would not have been able to perform the duties required of her former position as a Journeyman Material Handler.

On August 5, 2014, Mrs. Ford underwent an MRI at Beaumont MRI, which showed that her L1-2, L2-3, L3-4 discs all had herniations. The report stated the following under "IMPRESSION: 1. Broad-based posterior disc herniation measuring approximately 4mm at L4-5 creating minimal bilateral foraminal stenosis.[1] 2. Small focal leftward disc herniation measuring 3mm at L5-S1 with resulting mild left foraminal stenosis." In spite of receiving the report, defendants did not refer Mrs. Ford to a neurosurgeon or neurologist.

Mrs. Ford was questioned about two documents which were submitted into evidence by counsel for Defendants prior to her employment with Bechtel. These two reports concerned Mrs. Ford's complaints of back pain occurring on June 4, 2013 at Christus - St Elizabeth and a follow up visit to Dr. Marchand on June 5, 2013. The records indicated that Mrs. Ford underwent x-rays at the hospital with no acute findings. Both documents indicated she was suffering from degenerative disc disease and low back pain, which kept her off of work for several days, but seemed to have resolved.

In her 1008 Form filed on August 19, 2014, Mrs. Ford named Dr.

---

[1]A foraminal stenosis is a narrowing of the openings where the spinal nerve roots are located.

Gunderson as her treating physician and was referred to him by her counsel. Mrs. Ford was examined by Dr. Gunderson on January 20, 2015. Defendants certified Mrs. Ford for one visit with Dr. Gunderson, who prescribed "pain medication, muscle relaxants, and anti-inflammatory agents[,]" and scheduled a return appointment in four weeks. Defendants denied Dr. Gunderson's LWC-Form 1010 request for authorization for a return appointment on February 5, 2015. Due to the denial of additional medical treatment, Mrs. Ford was unable to return for further treatment with Dr. Gunderson.

Dr. Gunderson later rendered a medical report on August 4, 2015, in response to her counsel's request for his impression of Mrs. Ford's physical condition. The report was also read into the record at trial, and stated:

> In answer to your question: it is my impression that this patient's present diagnosis is multiple lumbar disc herniations. I would recommend that she attend physical therapy, and if she is not improved will probably need epidural steroid injections. When I saw her she was unable to perform gainful employment. I believe that the described work aggravated her pre-existing disc herniations or made them worse, and that is the precipitating cause of her lower back complaints.

Defendants offered no medical documentation or medical expert opinion to dispute the ultimate conclusion of Dr. Gunderson that the work Mrs. Ford performed on July 12, 2014, "aggravated her pre-existing disc herniations or made them worse, and that is the precipitating cause of her lower back complaints."

### Injury in the Course and Scope of Employment

If a worker brings a workers' compensation claim against her employer, she bears the burden of initially proving that she suffered "personal injury by *accident* arising out of and in the course of [her] employment." *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357, 360 (La.1992). Defendants' briefing to this court indicates they

10

relied on La.R.S. 23:1021(1) in denying Mrs. Ford's claim for benefits. Louisiana Revised Statute 23:1021(1) states: "'Accident' means an unexpected or unforseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration."

In *Bruno*, 593 So.2d at 361, the supreme court stated:

A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La.1979); Malone and Johnson, 13 *Louisiana Civil Law Treatise, Workers' Compensation*, § 253 (2d Ed.1980). Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Malone & Johnson, *supra; Nelson* [*v. Roadway Express, Inc.*, 588 So.2d 350 La.1991) ]. Corroboration may also be provided by medical evidence. *West*, [371 So.2d 1146].

*Rideaux v. Kohl's Dept. Stores, Inc.*, 11-914, (La.App. 3 Cir. 12/7/11), 80 So.3d 703, was cited in the oral reasons issued by the WCJ on April 20, 2016. In *Rideaux*, a case with a similar factual scenario, a panel of this court found in favor of the claimant, Ms. Rideaux who, although assigned to the jewelry department at Kohl's, was required to work non-stop in the warehouse for approximately five hours, "removing boxes from a fast-moving conveyer belt, opening the boxes, and hanging the garments on six-foot rolling racks." *Id.* at 707. Due to her height of only five feet, she had to stand on her tip-toes to hang the garments on the rack. *Id.* During the five hours of work in the warehouse, Ms. Rideaux testified that she "continuously felt stress and tightening in her right shoulder but, nonetheless continued working." *Id.* After the completion of her work she did not feel well, so

she sat on the floor until she was told to return to the jewelry department. After returning home she attempted to take her "shirt off over her head to take a shower when her right shoulder 'popped.'" *Id.* Ms. Rideaux had a doctor's appointment the next morning for another matter and complained to her physician about her right shoulder pain. Her doctor called in one of his colleagues, who "recommended that she undergo an MRI 'due to the knot' on her right shoulder.'" *Id.*

Although the alleged injury took place on September 7, 2009, Ms. Rideaux did not report the injury to her supervisor until September 25, 2009, and was given some workers' compensation paperwork to complete by the store manager. She reported that her arm hurt at home and she heard it pop before taking a shower. However the accident report stated she was cleaning shelves when she heard a popping sound.

Nevertheless, the WCJ awarded and a panel of this court affirmed the workers' compensation benefits to Ms. Rideaux. Despite the discrepancies in Ms. Rideaux's reporting, it was clear that after five hours working in the warehouse, she had developed a knot in her right shoulder, which was documented by a physician the next day. Therefore the WCJ found that the accident did occur at work and not at home, as argued by Kohl's, and was thus compensable. The WCJ found Ms. Rideaux credible, and this court agreed "with the WCJ's conclusion that the discrepancies noted in the accident report are minor given the big picture." *Id.* at 710.

Similarly, in this case, the WCJ found that Mrs. Ford was a credible witness and stated in oral reasons:

In this instance, the claimant, Ms. Ford, pointed to the fact that

12

she felt sore after a massive bolt relocation involving the unloading and lifting of boxes of bolts and valves. The high paced and physical activity required during the work day caused her to feel sore all over at work and ultimately experience acute pain to the point where she had to be taken to the hospital. The testimony of Ford's supervisor and husband corroborate Ford's testimony. Further, the medical testimony supports her claim for benefits. Dr. Gunderson believed that Ford's work activities aggravated her pre-existing disc herniation, or made them worse, and that is the precipitating cause of her lower back complaints. Other medical records support Ford's claim as the reports mention work related lifting and bending and that claimant worked as a journeyman for a construction company. Ford's testimony is credible and it is supported by both lay and medical testimony. Therefore, the Court finds that on July 12, 2014, the claimant, Evrin Ford, had a work related accident during the course and scope of her employment with Bechtel O.G.C.

The WCJ thus made a factual finding that the work done by Mrs. Ford for Bechtel on July 12, 2014, aggravated her pre-existing disc herniation. The testimony of her supervisor, Ms. Rooks, supports Mrs. Ford's testimony that the work done on July 12, 2014, was in excess of the usual workday and involved a lot of bending, squatting, and lifting. Mrs. Ford's testimony concerning her pain and soreness she felt at work and the back pain she experienced later that evening on July 12, 2014, as well as her subsequent admission to the emergency room at Victory on the following Monday, July 14, 2014, was corroborated by her husband and was more than adequately supported by medical documentation submitted into the record. As we previously indicated, Defendants failed to submit any medical documentation to dispute the opinion of Dr. Gunderson that Mrs. Ford had aggravated her degenerative disc disease while performing heavy labor at work.

In *Rivers v. Bo Ezernack Hauling Contractor Inc.*, 09-991, p. 4 (La.App. 3 Cir. 3/10/10), 32 So.3d 1091, 1095, *writ denied*, 10-807 (La. 6/4/10), 38 So.3d 309, this court held that "a claimant's recovery under Louisiana's workers' compensation laws is not barred by a pre-existing condition because an employer

takes the employee as he finds him." *See also Fontenot v. Wal-Mart Stores, Inc.*, 03-1570 (La.App. 3 Cir. 4/7/04), 870 So.2d 540, *writ denied*, 04-1131 (La. 6/25/04), 876 So.2d 843. Therefore, Mrs. Ford's pre-existing degenerative disc disease would not preclude her from receiving workers' compensation benefits when her condition was aggravated by an otherwise compensable work related accident. *Montou v. Bosie Cascade Co.*, 14-1248 (La.App. 3 Cir. 4/1/15), 160 So.3d 637, 644, *writ denied*, 15,870 (La. 6/5/15), 171 So.3d 952.

After a review of the entire record before us, we find that the WCJ was not manifestly erroneous in finding that Mrs. Ford suffered a work related injury during the course and scope of her employment with Bechtel on July 12, 2014.

*Assignment of Error Two – Failure of Mrs. Ford to Follow the Procedure Required by La.R.S. 23:1203.1*

Defendants further claim the trial court erred in ordering them "to authorize physical therapy and other treatment recommended by appellee's choice of orthopedic surgeon [, Dr. Gunderson] where there is no evidence that the procedure required by La.R.S. 23:1203.1 and implementing regulations was attempted."

The WCJ's judgment ordered Defendants to pay for the physical therapy and return visit recommended by Dr. Gunderson, as well as all "reasonable and necessary medical treatment." In *Church Mut. Ins. Co. v. Dardar*, 13-2351, (La.5/7/14), 145 So.3d 271, 277, the supreme court discussed the provisions of La.R.S. 23:1203.1(J)(1) and the "authorization and information" required to be submitted by a medical provider to the payor. La.Admin. Code Tit. 40, pt. I, § 2715 requires that a health care provider file a LWC Form 1010 requesting

14

authorization from the workers' compensation carrier to provide medical services to the claimant.

Defendants state in their brief to this court, "There was no evidence that Dr. Gunderson or any other provider submitted a formal request for authorization of treatment. Since there was no procedurally valid request for treatment before the Trial Court, it was error for the Trial Court to order the provision of specific treatment."

The February 19, 2015 Certified Medical Records of Dr. Clark Gunderson submitted into evidence by Mrs. Ford reflect that on January 21, 2015, Dr. Gunderson sent a LWC Form 1010 request to AIG, and their adjuster, Michael Morrison, requesting a return visit for Mrs. Ford on February 19, 2015, at 1:30. On February 5, 2015, Mr. Morrison replied, "In response to the 1010 form from Dr. Gunderson dated 1/21/15 requesting auth [sic] for return visit on 2/19/15, this claim is denied[;] therefore we are unable to authorize the request."

We find that a valid request for a return visit for Mrs. Ford to Dr. Gunderson was properly before the WCJ, as Defendant's had only authorized the one examination and denied Dr. Gunderson's LWC Form 1010 request for a follow-up visit. Louisiana Administrative Code, Title 40, Part I, § 2715(H) (emphasis added) states in pertinent part, "A health care provider, claimant, or claimant's attorney if represented **who chooses to appeal** a denial pursuant to this Subparagraph shall file a LWC-WC-1009 pursuant to Subsection J of this Section."

At the time of the request and denial of the return visit to Dr. Gunderson, in January and early February of 2015, Mrs. Ford had a previously filed 1008 Disputed Claim naming Dr. Gunderson as her treating physician and seeking medical treatment. Therefore, it would have been fruitless for Mrs. Ford to file an

additional appeal on Form 1009, as Defendants had answered Mrs. Ford's 1008 Disputed Claim denying her claim for workers' compensation medical benefits and the matter had been at issue before the WCJ.

Having found that Mrs. Ford was injured in the course and scope of her work with Bechtel, the WCJ correctly stated in her judgment that "claimant is entitled to all reasonable and necessary medical benefits." An employer's duty to furnish medical expenses is governed by La.R.S. 23:1203(A) which provides, in pertinent part:

> In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services.

Technically, Defendants are correct that the WCJ's judgment ordering them to provide Mrs. Ford with the "recommended physical therapy" was not the subject of Dr. Gunderson's LWC Form 1010 request after her initial visit. On her first visit he prescribed medication, presumably as a first step in the treatment process. However, Dr. Gunderson later made it clear in his August 4, 2015 report that he did recommend physical therapy for Mrs. Ford. Therefore, we find that the recommendation of physical therapy by her treating physician Dr. Gunderson was placed at issue before the WCJ and properly rendered in the WCJ's March 31, 2016 judgment.

***Assignment of Error Three-Penalties and Attorney Fees.***

A panel of this court clearly defined the basis for an award of penalties and attorney fees in *Landry v. Furniture Center*, 05-643, p. 10 (La. App. 3 Cir. 1/11/06), 920 So.2d 304, 311, *writ denied*, 06-358 (La. 4/28/06), 927 So.2d 290:

Under La.R.S. 23:1201(F), a claimant in a workers' compensation claim has the burden of proving his entitlement to statutory penalties for the employer's refusal or failure to timely pay workers' compensation benefits. To avoid the imposition of penalties and attorney fees, the employer and its insurer must provide factual and medical evidence to reasonably controvert a workers' compensation claim. *Bolton v. Mike Fleming Construction,* 36,521 (La.App. 2 Cir. 12/11/02), 833 So.2d 1177. The employer must have an "articulable and objective reason to deny benefits at the time it took the action." *Authement v. Shappert Engineering,* 02-1631 (La. 2/25/03), 840 So.2d 1181, 1188.

"Whether or not the employer is cast with attorney fees and penalties is a question of fact that will not be reversed on appeal absent manifest error." *Alpizar v. Dollar General*, 13-1150, p.13 (La.App. 3 Cir. 3/5/14), 134 So.3d 99, 108 (quoting *Lambert v. Brookshire Grocery Co.*, 06-1001, p. 11 (La.App. 3 Cir. 12/20/06), 945 So.2d 918, 927).

***Penalties***

Defendants urge that they should not be cast for the $2,000.00 in penalties for failing to pay Mrs. Ford workers' compensation benefits or the $2000.00 in penalties for failing to pay her medical benefits. Defendants claim that this was a close question and that they had a right to ask the court for resolution. *See Fontenot v. J.K. Richard Trucking*, 97-220 (La.App. 3 Cir 6/4/97), 696 so.2d 176, 182. Defendants claim that Mrs. Ford did not report an accident or anything more than the usual soreness "all over" and fatigue following her overtime work on July 12, 2014. However, Mrs. Ford did notify her supervisor Ms. Rooks, on July 14, 2014, that she was in pain, was being taken to the hospital, and would not be coming in to work. Ms. Rooks was already aware that Mrs. Ford had complained

17

to her on July 12 that her back was sore from all the hard work she had to do that day.

When she did notify Defendants on July 30, 2014, that she thought her lower back pain was work related, Mrs. Ford was sent to the company doctor who noted that the etiology of the complaints was "unknown." However he recommended that she be referred to a neurologist and an MRI be performed. As previously indicated Mrs. Ford did undergo an MRI which was positive for lumbar disc herniations.

Defendants argue that the onset of pain could have easily occurred when Mrs. Ford attempted to get up from her recliner, as individuals with degenerative disc disease need not exert themselves in order to aggravate the condition. However, in August 2015, Defendants had Dr. Gunderson's medical opinion which clearly related Mrs. Ford's back injury to the work done on July 12, 2014. Defendants presented no medical evidence at trial to contradict Dr. Gunderson's medical opinion. Therefore we find that the WCJ did not commit manifest error in finding that Defendants were liable for penalties in the amount of $2,000.00 for failure to timely provide workers' compensation benefits to Mrs. Ford. These benefits have since been paid.

Defendants also claim that no penalties should have been assessed for failure to authorize Mrs. Ford's medical treatment. They claim there was no evidence that any request for treatment via Form 1010 had been denied and that her employer-funded health insurance, or the employer, had paid for treatment up to the point of trial.

As previously addressed, on February 19, 2015, Dr. Gunderson sent a LWC Form 1010 request to AIG, and their adjuster, Michael Morrison, requesting a

return visit for Mrs. Ford on February 19, 2015, which was denied. Therefore we find that the WCJ did not commit manifest error in finding that Defendants were liable for penalties in the amount of $2,000.00 for failure to provide medical treatment to Mrs. Ford.

### Attorney Fees

Although Defendants cite as an error on appeal the award of attorney fees, they fail to brief the issue on appeal. However, after finding that Mrs. Ford is entitled to the penalties awarded for Defendants' failure to provide her with workers' compensation benefits and medical treatment, we see no basis under La.R.S. 23:1201 to deny the properly submitted attorney fees in the amount of $12,000.00 for Defendants "failure to reasonably controvert the claim of Mrs. Ford for workers' compensation benefits stemming from the July 12, 2014 work related accident." Therefore, we find no manifest error in the WCJ's award of attorney fees. Accordingly, Defendants' assignment of error three is without merit.

### Attorney Fees on Appeal

Mrs. Ford filed an answer and seeks an additional award of attorney fees for work done on appeal. "An increase in [attorney] fees is awarded on appeal when the defendant appeals, obtains no relief, and the appeal has necessitated more work on the part of the plaintiff's attorney, provided that the plaintiff requests such an increase." *McKelvey v. City of Dequincy*, 07-604, pp. 11-12 (La.App. 3 Cir. 11/14/07), 970 So.2d 682, 690. The record before this court reflects that Mrs. Ford's counsel requested such attorney fees, filed a brief in support of the judgment of the WCJ, and was successful in defending the judgment in its favor on appeal. Therefore, $3,000.00 in attorney fees for work performed on appeal is awarded.

19

## CONCLUSION

For the foregoing reasons, we affirm the March 31, 2016 judgment of the Workers' Compensation judge in all respects. We also award attorney fees in the amount of $3,000.00 for work done on appeal. All costs of this appeal are assessed to Bechtel O.G.C. Construction Services, Inc., and Insurance Company of The State of Pennsylvania c/o AIG Claims, Inc.

**AFFIRMED.**