663 So.2d 57 (1995)
Earl GARNER, Plaintiff-Appellee,
v.
SHEATS & FRAZIER, et al., Defendants-Appellants.
No. 95-39.
Court of Appeal of Louisiana, Third Circuit.
July 5, 1995.
*58 Kearney Tate, Eunice, for Earl Garner.
David Keith Johnson, Baton Rouge, for Sheats & Frazier, Inc.
Before KNOLL, COOKS and PETERS, JJ.
KNOLL, Judge.
This is a worker's compensation case. Sheats & Frazier, the employer, and its worker's compensation carrier, the Louisiana Workers' Compensation Corporation, suspensively appeal the judgment of the Office of Worker's Compensation (OWC) that awarded Earl Garner medical benefits and supplemental earnings benefits (SEB). The defendants contend that the hearing officer erred: (1) in finding that Garner proved that there was a compensable work-related accident; and (2) in her determination that Garner was entitled to receive supplemental earnings benefits. Garner answered the appeal, contending *59 that the hearing officer erred in failing to award penalties and attorney's fees.

FACTS
The record shows that on March 29, 1993, the date of injury, Garner was employed as a welder for Sheats & Frazier. His rate of pay was $14.00 per hour and he worked 40 hours per week.
Garner testified that he injured his left knee on March 29 when he was attempting to weld while working on a seven foot scaffold. He stated that he twisted his left leg as he was back-welding in an awkward position, and that he experienced a light amount of left knee pain at the time of the injury. The record shows that on the next morning Garner told his supervisor, Herschel Ledoux, of his injury and that Ledoux submitted an employer's report of injury on March 31, 1993. The testimony of Garner's wife, Karen, and two co-workers, Steve Duhon and Gary Tyler, corroborated Garner's complaints of a left knee injury.
Garner was seen by Dr. J.W. Crookshank, Jr., the employer's doctor, on March 31 for his injury, was given anti-inflammatory medication, and was returned to light duty work. Garner said that he left the job site because of his injury and did not return to work for Sheats & Frazier. Instead, Garner sought medical treatment on April 3, 1993, from Dr. Lynn Foret, an orthopedist. Dr. Foret reported that Garner was experiencing left knee pain, and also noted that Garner stated that he had low back pain prior to his work accident. His initial diagnosis was an irritation of the knee. Garner next saw Dr. Foret on April 23, 1993, for continued complaints of knee and low back pain. An MRI showed no abnormalities of the knee. However, on May 11, 1993, Dr. Foret reported that Garner was suffering more with his knee, that he did not have full extension, that he had locking sensation in the left knee, and that there was fluid build-up on the knee. At that time Dr. Foret opined that Garner suffered from an internal derangement of the left knee, but decided to send Garner back to work to see how he would be able to function in a work setting. Since the MRI was negative, he suggested that an orthoscopic examination of the knee might be needed, depending on how Garner was able to function on his return to work, and advised Sheats & Frazier of this in a May 17th letter.
The record shows that Sheats & Frazier paid Garner wages in lieu of compensation through May 17, 1993, and paid all his medical bills, except for the charges for the MRI of the left knee. The record shows that the orthoscopic examination of Garner's left knee was never performed.
Garner testified that he returned to work as a welder and was employed by the following: Glitschfield Services earning $16.00 per hour; Flour Daniels Service Corporation earning $13.50 per hour; CBI NA-CON, Inc.; IMTC Inc.; Inland Industrial Construction; Flour Daniels Construction; Stone & Webster.[1]
The hearing officer determined that Garner proved that he suffered a work-related accident. She awarded SEB and medical benefits, but denied Garner's request for penalties and attorney's fees.

PROOF OF AN ACCIDENT
The defendants first contend that the hearing officer erred in finding that Garner proved that he had a work-related accident. They contend that Garner was unable to pinpoint any event or occurrence which caused his physical ailment.
In order to be compensable under the worker's compensation laws, an injury must have resulted from an "accident arising out of and in the course of employment." La. R.S. 23:1031. Accident is defined in La.R.S. 23:1021(1) as follows:
"Accident" means an unexpected or unforeseen actual, identifiable, precipitous *60 event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
In her written reasons for judgment, the hearing officer stated:
Mr. Garner alleges that on or about March 29, 1993, he suffered an injury to his left knee while working on a seven foot scaffold doing a back weld. Mr. Garner's testimony was that he strained his leg while maneuvering himself around the scaffold to do the job required by his employer.
* * * * * *
A worker's compensation claimant has the burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he sustained injury. Holiday v. Borden Chemical, 508 So.2d 1381 (La.1987). See also Borel v. Dynamic Offshore Contractors, 626 So.2d 565 (La. App. 3 Cir.1993) and see also LSA-R.S. 23:1031(A).
Despite the liberal construction of the statute afforded the worker in a compensation action, the worker's burden of proof is not relaxed. Prim v. City of Shreveport, 297 So.2d 421 (La.1974). Rather, as in other civil action[s], the plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Nelson v. Roadway Express, Inc., 588 So.2d 350 (La. 1991). A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La. 1979). Malone and Johnson, 13 Louisiana Civil Law Treatise, Workers' Compensation, § 253 (2d Ed.1980). Corro-boration of the [claimant's allegation of an accident may be provided by the] worker's spouses or friends. Malone and Johnson, supra; Nelson, supra. Corroboration may also be provided by medical evidence. West, supra. See also Bruno v. Harbert International, Inc., et al., 593 So.2d 357 (La.1992).
The [hearing officer] observed the claimant testifying and reviewed the other evidence and testimony offered at the trial of this case. After reviewing the jurisprudence and carefully examining the evidence presented, and recognizing the conflicting testimony, the [hearing officer] concludes that an accident did occur as alleged by the claimant, Earl S. Garner. Mr. Garner's testimony was corroborated by the testimony of other witnesses, including his wife and fellow workers. Further, Mr. Garner's version of events was supported by subsequent circumstances, i.e., discomfort and swelling. The defendants' evidence did not discredit or cast serious doubt on Mr. Garner's version of the incident. The record reflects that prior to the accident, Mr. Garner was able to perform his job duties. Based on all of the evidence presented, the [hearing officer] finds that the evidence preponderates in Mr. Garner's favor that a work accident occurred.
We have carefully reviewed the record and find no manifest error in the hearing officer's holding that a compensable accident was proven. The record shows that Garner's testimony and that of his corroborating witnesses was credible. He showed immediate evidence of a knee injury that necessitated medical attention and the evidence shows that his injury prevented him from performing his job. Clearly, the evidence preponderates that Garner suffered an accident as contemplated by the statute.

SUPPLEMENTAL EARNINGS BENEFITS
The defendants next contend that the hearing officer erred in finding that Garner was entitled to supplemental earnings benefits. They argue that Garner returned to work in the months following his injury and that he earned more per hour while working for Glitschfield than he earned while working for Sheats & Frazier. Accordingly, they suggest that Garner failed to prove his entitlement to SEB.
*61 Supplemental earnings benefits are awarded when a work-related injury prevents the claimant from earning ninety percent of his pre-injury wages. La.R.S. 23:1221(3). Once the claimant has met this initial burden of proving entitlement to SEB, the burden of proof shifts to the employer if it wishes to prove the employee is earning less than he or she is able to earn. The employer bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in the employee's or the employer's community or reasonable geographic region. Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989). If the employer satisfies its burden of showing that the supplemental earnings benefits claimant was physically capable of work and that work was offered or available, claimant must show, by clear and convincing evidence, unaided by any presumption of disability, that he is unable to perform employment offered or available solely as a consequence of substantial pain. Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App. 2 Cir.1991). Whether an employee has proved that he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident is necessarily a facts and circumstances determination in which the court is mindful of the jurisprudential tenet that worker's compensation law is to be liberally construed in favor of coverage. Smith v. Louisiana Dept. of Corrections, 93-1305 (La. 2/28/94), 633 So.2d 129. Furthermore, our appellate review of such a determination is governed by the manifest error standard. Id.
As shown earlier in the factual recitation of this case, Garner worked as a welder for various employers subsequent to his May 11 examination by Dr. Foret. It is likewise correct to note that Glitschfield, the first of such employers, paid Garner $16.00 per hour, $2.00 per hour more than Sheats & Frazier paid. However, we do not find this fact dispositive of the issue presented. Rather, we note that although the record shows that Garner earned $31,000 when he worked for Sheats & Frazier, it is uncontroverted that Garner showed that in the year subsequent to his injury he was only able to earn approximately $21,000.
Moreover, it is well settled that a determination of whether a claimant's pain is substantial enough to be disabling is a question of fact that must be determined according to the circumstances of each individual case. Augustine v. Courtney Construction Co., 405 So.2d 579 (La.App. 3 Cir.), writ denied, 407 So.2d 735 (La.1981). Likewise, as stated above, the manifest error standard of appellate review applies in worker's compensation cases and great deference is accorded to the hearing officer's factual findings and reasonable evaluations of credibility. Hopes v. Domtar Indus., 627 So.2d 676 (La. App. 3 Cir.1993).
In the present case, Garner testified that knee pain prevented him from continuing with the various jobs he was able to find as a welder. With regard to the Glitschfield employment, he stated that his work involved the climbing of towers; he stated that although he was able to climb the first one hundred feet, the pain in his knee prohibited him from climbing the 200 and 300 feet required by the employer. Looking at Garner's attempts to work in his trade and his having to change employment approximately seven times because of the pain he experienced, we cannot say that the hearing officer was clearly wrong in concluding that substantial pain prohibited Garner from earning at least ninety percent of his pre-injury wages. Accordingly, we find no error in the hearing officer's determination that Garner proved his entitlement to supplemental earnings benefits.
Notwithstanding this determination, we find it necessary to remand this case to the OWC. Once it has been determined that a claimant is entitled to supplemental earnings benefits the amount of such benefits must be calculated. Cousins v. City of New Orleans, 580 So.2d 536 (La.App. 4 Cir.), writ granted on other grounds and remanded, 584 So.2d 1145 (La.1991). In the present case, Sheats & Frazier stated that Garner earned $560.00 per week at the time of his injury. Once a claimant has established his entitlement to SEB, it is incumbent upon the employer *62 to prove by a preponderance of the evidence the average monthly wages the injured employee is able to earn. Id. at 540. In the case sub judice, as shown hereinabove, no evidence was submitted that shows a specific amount that Garner has earned in employment on an average monthly basis since the injury, nor is there evidence in the record from which we could make such a determination. Therefore we must remand this case to the OWC to determine the maximum amount of supplemental earnings benefits to which Garner is entitled in light of the statutory formula established by the Legislature.

PENALTIES AND ATTORNEY'S FEES
Garner answered the appeal, asking us to reverse the hearing officer's denial of his request for penalties and attorney's fees.
La.R.S. 23:1201(E) allows the OWC to assess a twelve percent penalty for nonpayment of worker's compensation benefits unless the employer or the insurer "reasonably controvert" the claimant's right to worker's compensation benefits. Under La.R.S. 23:1201.2, a worker's compensation claimant is entitled to reasonable attorney's fees if the failure to pay benefits is found to be arbitrary, capricious, or without probable cause.
In the case sub judice, we do not find that Garner proved entitlement to these awards. The record shows that Dr. Foret allowed Garner to return to work without restrictions to see how his knee would perform on the job; if he was unable to perform without knee pain, Dr. Foret opined that he would have to orthoscopically examine Garner's knee. Although Garner testified that pain kept him from working steadily at his various places of employment, the record is void of any evidence that Garner communicated his complaints of continued knee pain to Dr. Foret or Sheats & Frazier. Likewise, at no time did Garner make demand upon Sheats & Frazier or its insurer to authorize payment of the additional testing suggested by Dr. Foret. Accordingly, we find no error in the hearing officer's denial of Garner's request for penalties and attorney's fees.
For the foregoing reasons, the judgment of the Office of Worker's Compensation is affirmed. Pursuant to our instructions, this case is remanded to the Office of Worker's Compensation for the calculation of the amount of supplemental earnings benefits Garner is entitled to receive. Costs of this appeal are assessed to the defendants.
AFFIRMED AND REMANDED.
NOTES
[1] Although a document was entered into evidence that shows the dates that Garner worked for the various employers and the total amount he earned at each, a stipulation was entered that the document was only entered into evidence for the purpose of showing the names of the various employers. Separate testimony was received that indicated the hourly wage Garner received for his work at Glitschfield and Flour Daniel; no other evidence of this kind was elicited regarding the other employers.