669 So.2d 529 (1996)
Leon REED
v.
DIRECT INSTALLERS.
No. 95-CA-1684.
Court of Appeal of Louisiana, Fourth Circuit.
January 31, 1996.
*531 Robert C. Lowther, Jr., Farmer & Burns, Ltd., Covington, for Plaintiff/Appellee.
Teresa C. Leyva, Mayra Leyva, Kristi L. Stroebel, Juge, Napolitano, Leyva & Guilbeau, Metairie, for Defendant/Appellant.
Before CIACCIO, PLOTKIN and MURRAY, JJ.
PLOTKIN, Judge.
The primary issues in the instant appeal are the extent of the continuing disability suffered by claimant Leon Reed when he injured his back while installing carpet during the course and scope of his employment with defendant Direct Installers on May 4, 1992 and the amount of compensation due Reed. The most significant issue is the interpretation of the employer's burden under LSA-R.S. 23:1221(3)(c)(i) to prove the availability of employment to the employee before reducing the employee's supplemental earnings benefits (SEB).

Facts and procedural history
Immediately following his injury, Reed consulted with Dr. John Schuhmacher, who performed a lumbar laminectomy and continued to treat Reed until September 15, 1993, when he found that Reed had reached maximum medical improvement and released Reed to return to work with some restrictions. Between the time of Reed's injuries in May of 1992 and the time that he was released to return to work in October of 1993, defendant State Farm Fire and Casualty Co., Direct Installers' workers' compensation insurer, paid Reed $146.67 per week, calculated on the basis of his average weekly wage of $220. Thereafter, Diana Guevara, senior rehabilitation specialist with Intracorp, identified some jobs available in the New Orleans area which were consistent with the restrictions imposed by Dr. Schuhmacher, on the request of State Farm adjustor Sue Maroney. Dr. Schuhmacher approved those jobs for Reed, and the list was sent to Reed. State Farm then reduced plaintiff's SEB to $33.33, based on the assumption that Reed could perform a minimum wage job 40 hours per week.
On December 3, 1993, some three months after his release by Dr. Schuhmacher, on Dr. *532 Schuhmacher's suggestion, Reed consulted Dr. Bernard L. Manale, an orthopedic surgeon who initially agreed with Dr. Schuhmacher's restrictions. However, Dr. Manale later ordered a functional capacity evaluation. Brian Bienvenu, who performed the functional capacity evaluation, wrote a report recommending that Reed not return to full-time work, but work no more than six hours per day; Ms. Maroney received a copy of that report. After receiving the results of the functional capacity evaluation, Dr. Manale advised Ms. Maroney by letter dated May 6, 1994 as follows:
You should by now have received a copy of the Functional Capacity Evaluation performed by the facility at Touro Infirmary. This document is over ten pages long and gives a lot of information regarding Mr. Reed. The patient appeared to be cooperative and the test appeared to be valid. Considering the severity of the physical restrictions in the job and considering the patient's orthopaedic diagnosis, considering the abnormalities on EMG study and his excessive weight, I believe all might be served best by declaring the patient totally and permanently disabled rather than continuing to exhaust ourselves and the patient and try and get him "back to work." This is my own opinion. I realize the opinion of others may differ.
Therefore, I respectfully request that if this man is allowed to be declared totally and permanent disabled, he can remain under my care for conservative treatment, follow-up and pain medication.
(Emphasis added.) After receiving this correspondence from Dr. Manale, State Farm failed to modify Reed's SEB. The defendants did have Reed examined by Dr. Gordon Nutik, who opined that Reed could work.
The hearing officer found that Reed was not totally and permanently disabled, but he was entitled to "the full amount of indemnity" allowed under supplemental earnings benefits (SEB) as established by LSA-R.S. 23:1221(3), and that the full amount was to be reinstated from the date of the reduction "until it can be legally reduced or eliminated." The "full amount of indemnity" would have entitled Reed to $146.67 per week, the same amount he received as temporary, total disability benefits prior to the reduction. The hearing officer also found that the defendants arbitrarily and capriciously reduced Reed's benefits and awarded $5,000 in attorney fees plus a 12 percent penalty on all back indemnity. Defendants were also cast in judgment for all costs of the proceedings. The hearing officer's award of penalties and attorney fees was based, according to his reasons for judgment, on the fact "that a reduction under SEB was taken; but that after the findings on the March 13, 1994 Functional Capacity Evaluation Test, the SEB reduction should have been based on claimant being a part time rather than a full time employee."
The defendants appeal, claiming that the hearing officer erred by awarding Reed his full compensation rate for SEB and by awarding penalties and attorney fees. Reed answered the appeal, claiming error in the hearing officer's determination that he is not entitled to permanent and total disability benefits, as well as rehabilitation. Reed also seeks damages for frivolous appeal and further attorney fees for work done on appeal.

Extent of Reed's disability
Reed claims that the trial court improperly determined that he was not totally and permanently disabled, based on Dr. Manale's testimony, as well as "logic and common sense."
Determination of whether a claimant is permanently or temporarily totally disabled is a "question of fact that must be determined according to the circumstances of each individual case." Huval Baking Co. v. Fontenot, 629 So.2d 431, 434 (La.App. 3d Cir.1993). Furthermore, that determination is "legal rather than purely medical." Franklin v. Le Meridien Hotel, 93-1328 (La. App. 4th Cir. 3/15/94), 634 So.2d 64. The claimant is required to prove that he is "unable to engage in any gainful occupation, whether or not the same type of work he was engaging in at the time of injury." Schmitt v. City of New Orleans, 632 So.2d 367, 373-74 (La.App. 4th Cir.1993). He must also prove that his disabling injury is permanent *533 and not just for an indefinite period. Id. at 374.
Our review of the record in the instant case convinces us that the trial court was not manifestly erroneous in finding that Reed failed to carry his burden of proving that his disability was total and permanent. Although some of Dr. Manale's comments would indicate that Reed might never be able to hold a job for very long because of the physical problems he would inevitably experience should he return to work, those comments are not sufficient to prove by a preponderance of the evidence that Reed will never again be able to engage in any gainful occupation. Thus, Reed's arguments on this issue have no merit.
The parties agree however that Reed is entitled to some SEB benefits because he is unable to earn at least 90 percent of the wages he received at the time of his injury. The only question is the proper amount of SEB payments.

Amount of SEB payments
Determination of the amount of SEB payments due an injured employee is governed by the provisions of LSA-R.S. 23:1221(3), which provides, in pertinent part, as follows:
(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three tenths times the wages as defined in R.S. 23:1021(10).
(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain.
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.
(ii) For purposes of Subsubparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.
Generally, the purpose of SEB is "to compensate the injured employee for the wage earning capacity he has lost as a result of his accident." Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993). In making these determinations, courts are required to be "mindful of the jurisprudential tenet that worker's compensation law is to be liberally construed in favor of coverage. Smith v. Louisiana Department of Corrections, *534 93-1305 (La. 2/28/94), 633 So.2d 129, 132; Garner v. Sheats & Frazier, 95-39 (La. App. 3d Cir. 7/5/95), 663 So.2d 57, 61.
Once a claimant, such as Reed in the instant case, has shown that he is entitled to SEB because he is no longer able to earn 90 percent of his pre-injury wages, the burden shifts to the defendant to prove that "the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region." LSA-R.S. 23:1221(3)(c)(i); Smith, 633 So.2d at 133; Garner, 663 So.2d at 61. If the employer carries this burden, the amount of SEB payments are then based on the difference between the average weekly wage and the plaintiff's earning capacity after the injury. LSA-R.S. 23:1221(3)(a); Freeman v. Poulan/Weed Eater, 93-1530 (La. 1/14/94), 630 So.2d 733, 739; Garner, 663 So.2d at 61.
The defendants in the instant case claim that the trial judge improperly found that Reed was entitled to receive full SEB compensation benefits because they met their burden of proving that work was available to the plaintiff. They claim that the reduction in SEB payments to $33.33 after Dr. Schuhmacher released Reed to return to work was proper because they fulfilled their obligations under the statutes to show the availability of work, based on the list of jobs identified by Ms. Guevara and approved by Dr. Schuhmacher.
In order for an employer to properly reduce SEB payments, it must show that the employee is earning less than he is able to earn. Smith, 633 So.2d at 133. In order to do that, the employer must prove that the employee was physically able to perform a particular job and either that the job was offered to the employee or that the job was available to the employee in his community or reasonable geographic region. Garner, 663 So.2d at 61. Generally, an employer can meet that burden by "showing that jobs are generally available within the range of the employee's capacity." Ambrose v. Fluor Constructors, Inc., 537 So.2d 1176, 1181 (La.App. 4th Cir.1988). However, as in other circuits, "the jobs proven to be available to an employee under R.S. 23:1221(3)(c)(1) must be realistically obtainable by the employee and must offer earnings which are more than mere speculation." Culotta v. Great Atlantic & Pacific Tea Co., 524 So.2d 259 (La.App. 5th Cir.), writ denied, 530 So.2d 88 (La.1988).
The defendants in the instant case rely on Ms. Guevara's testimony that she included each of the jobs on the list because she verified Reed's ability to perform the requirements of the job and she contacted all the potential employers listed and verified the availability of the job as sufficient evidence to meet their burden of showing the availability of employment to the plaintiff. Our review of the record indicates that the employer did in fact meet his burden of proof on this issue.
However, the fact that the defendants meet their burden of proof does not end the inquiry, as the defendants would have us hold. Once the defendant employer meets his burden under the statute, the burden shifts back to the employee to show "by clear and convincing evidence, unaided by any presumption of disability, that he is unable to perform employment offered or available solely as a consequence of substantial pain." LSA-R.S. 23:1221(3)(c)(ii); Garner, 663 So.2d at 61; Brown v. Blue Grass Liquor Co., 25552-CA (La.App.2d Cir. 2/23/94), 632 So.2d 904, 910.
We find Reed's testimony concerning his inability to secure a job sufficient to rebut the defendants' evidence concerning the availability of jobs which Reed is physically able to perform with "clear and convincing evidence, unaided by any presumption of disability." Reed testified that he placed applications with virtually all of the employers on Ms. Guevara's list and that he got only one interview. At that interview, Reed was told that he would be required to walk up and down stairs, which he is physically unable to do. The claimant's testimony that none of *535 the employers he contacted either on the suggestion of the employer or on his own initiative either offered him a job or had jobs available has been found to be sufficient to prove overcome the employer's evidence to the contrary. See Herren v. State, 25564-CA (La.App. 2d Cir. 2/23/94), 632 So.2d 880, 883. Reed's testimony on this issue was unrebutted at trial. Further, nothing in the record casts doubt or suspicion on the reliability of Reed's testimony on this issue. See Benoit v. PET, Inc., 93-1019 (La.App. 3d Cir. 4/6/94), 635 So.2d 620, 625, writ denied, 94-1168 (La. 6/24/94), 640 So.2d 1352.
Moreover, Ms. Guevara admitted that she did not question the employers, especially the security guard employers, about whether Reed would be required to apprehend suspects, which Dr. Schuhmacher testified by deposition Reed could not do. A claimant may rebut an employer's proof of the availability of jobs by showing that "`economic and other conditions' belie such availability." Romero v. Grey Wolf Drilling Co., 594 So.2d 1008 (La.App. 3d Cir.1992). The record indicates that the hearing officer was not manifestly erroneous in finding that no jobs are available which Reed is physically capable of performing.
The fact that the defendants ignored Dr. Manale's opinions that Reed's limitations were more serious than indicated by Dr. Schuhmacher's report, as well as Bienvenu's indications on the functional capability evaluation report, also supports this determination. "An employer may not selectively embrace medical reports which favor its position when subsequent medical information undisputedly refutes them." Huval Baking Co., 629 So.2d at 434. Both Ms. Maroney and Ms. Guevara testified that they relied on each other's agencies to make any modifications after Dr. Manale's opinions became known; however, neither agency took any steps to properly evaluate the problem.
Thus, we find no error in the trial court judgment awarding Reed full SEB compensation payments of $146.67 per week from the date his benefits were reduced.

Penalties and attorney's fees
The standard for determining whether penalties and attorney's fees should be assessed for an employer's arbitrary and capricious refusal to pay or reduction in workers' compensation benefits under LSA-R.S. 23:1201(E) is whether "the employee's rights to benefits are reasonably controverted." Schmitt v. City of New Orleans, 632 So.2d 367, 374 (La.App. 4th Cir.1993). The employee's right is "deemed reasonably controverted if the employer or insurer had a reasonable basis for believing that compensation and medical expenses were not due." Id. The defendants in the instant case have not shown a reasonable basis for believing that Reed's SEB payments should not be modified following Dr. Manale's reports. Thus, we find no manifest error in the hearing officer's award of penalties and attorney's fees.
However, we reject Reed's claim that he is entitled to additional penalties for frivolous appeal; the defendants' position is not so untenable as to make such penalties appropriate. We do agree that Reed is entitled to additional attorney's fees for work done on appeal and award $1,500.

Conclusion
Accordingly, the hearing officer's decision is affirmed. Reed is awarded full SEB benefits of $146.67 per week from the time of reduction of his benefits, plus 12 percent penalties on unpaid back amounts of benefits and $5,000 attorney's fees. Additional attorneys fees in the amount of $1,500 for work done on appeal are also assessed against the defendants.
AFFIRMED.