# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 17-689


**JEWEL VAUGHN, III**

**VERSUS**

**DIS-TRAN STEEL, LLC**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT 02
PARISH OF RAPIDES, NO. 15-07061
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN E. CONERY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and John E. Conery, Judges.


**AFFIRMED.**

**Scott Louis Zimmer**
**Kean Miller, LLP**
**333 Texas Street, Suite 450**
**Shreveport, Louisiana  71101**
**(318) 562-2700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Dis-Tran Steel, LLC**

**Joseph Yuri Beck**
**Hunter & Beck, LLP**
**Post Office Box 11710**
**Alexandria, Louisiana  71315**
**(318) 487-1997**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Jewel Vaughn, III**

**CONERY, Judge.**

Dis-Tran Steel, LLC (Dis-Tran), appeals the judgment of the workers' compensation judge (WCJ) in favor of Jewell Vaughn, III, who was formerly employed by Dis-Tran as a welder. Mr. Vaughn answers the appeal seeking attorney fees for work done on appeal. For the following reasons we affirm the underlying judgment and award five thousand dollars ($5,000.00) in attorney fees for work done on appeal.

### FACTS AND PROCEDURAL HISTORY

Mr. Vaughn filed a 1008 Disputed Claim for Compensation, commonly referred to as a Form 1008, pursuant to La.R.S. 23:1034.2 (F)(1) on November 3, 2015, against Dis-Tran claiming, "1. No wage benefits have been paid." Mr. Vaughn also sought "[a]ll benefits and claims due claimant under the Louisiana workers' compensation laws. Penalties and attorney's fees." On December 17, 2015, Mr. Vaughn was allowed to file his first supplemental and amending disputed claim for compensation also seeking his "Choice of Physician, Dr. Arsham Naalbandian (neurologist)."

Mr. Vaughn claimed that on September 29, 2015, he suffered a concussion while in the course and scope of his employment with Dis-Tran. Mr. Vaughn described the accident and injury in the Form 1008 as follows, "[w]hile moving materials, a coworker inadvertently struck Mr. Jewel Vaughn in the back of his head, causing the claimant to go unconscious." Mr. Vaughn was struck in the head by two welding curtains, which were knocked over by a co-worker who was moving a load of welding pipe with a crane.

Dis-Tran answered Mr. Vaughn's claim for compensation on December 21, 2015. Dis-Tran admitted that Mr. Vaughn was employed by it on the date of the

accident, and that the accident occurred while he was in the course and scope of his employment with Dis-Tran. Dis-Tran, however, denied that Mr. Vaughn had "suffered a compensable injury" and denied that he was "entitled to indemnity benefits." Dis-Tran also pled the affirmative defense of "intoxication," pursuant to La.R.S. 23:1081(1)(b) and (5). Later, Dis-Tran clarified that they believed Mr. Vaughn was under the influence of Percocet.

The matter was tried before the WCJ on March 2, 2017 and taken under advisement. The WCJ allowed the parties to file post-trial memoranda. On May 1, 2017, the WCJ issued its oral reasons for judgment,[1] followed by its May 23, 2017 judgment finding that Mr. Vaughn suffered a "temporary total disability beginning on September 29, 2015." The parties stipulated that Mr. Vaughn's average weekly wage was $615.13. Dis-Tran was ordered to pay Mr. Vaughn "2/3 of his average weekly wage . . . from the date of his accident, September 29, 2015, to the present, and shall continue to pay indemnity benefits as they become due[.]" The WCJ also ordered Dis-Tran to "authorize Mr. Vaughn's choice of physician specializing in neurology[,]" and "authorize and pay for the brain MRI recommended by Dr. Gerald Calegan[.]"

The WCJ further found that Dis-Tran had "failed to reasonably controvert Mr. Vaughn's workers' compensation claim." Therefore, the WCJ ordered Dis-Tran to "pay a $2,000 penalty for failure to authorize indemnity benefits, and shall pay an additional $2,000 for failure to authorize medical treatment[.]" The WCJ awarded Mr. Vaughn attorney fees in the amount of $7,500, assessed all court

---

[1] The May 1, 2017 transcript of the WCJ's oral reasons for judgment was not made a part of the record on appeal. On January 23, 2018 this court issued an order requiring the Clerk for the Office of Worker's Compensation District 2 to supplement the record with the transcript of the WCJ's oral reasons for judgment, which were received on February 5, 2018 and are now a part of the record on appeal.

costs against Dis-Tran, and awarded "legal interest on all sums awarded above, as provided by law." It is from the May 23, 2017 judgment of the WCJ that Dis-Tran appeals.

## ASSIGNMENTS OF ERROR

Dis-Tran assigns the following assignments of error on appeal:

1. The trial court erred in holding Vaughn was not disqualified from receiving workers compensation benefits due to his intoxication at the time of the accident. Dis-Tran proved that Vaughn was intoxicated at the time of the accident, and the trial court did not shift the burden to Vaughn to rebut the presumption that his intoxication caused or contributed to the alleged incident.

2. The trial court erred in holding that Vaughn sustained a compensable work injury and that he is entitled to Temporary Total Disability Benefits from the last day he worked at Dis-Tran.

3. The trial court erred in holding Vaughn is currently unable to engage in any type of employment and entitled to ongoing Temporary Total Disability Benefits.

4. The trial court erred in awarding Vaughn penalties and attorneys' fees after Dis-Tran reasonably controverted his claim.

## LAW AND DISCUSSION

### *Standard of Review*

This court discussed the standard of review to be utilized in workers' compensation cases in *LeBlanc v. Wal-Mart Stores, Inc.*, 15-558, pp. 10-11 (La.App. 3 Cir. 11/4/15), 177 So.3d 1125, 1132-33, noting:

> The standard of review in a workers' compensation claim is well established and was succinctly stated in *Bracey v. City of Alexandria*, 13-16, pp. 2-3 (La.App. 3 Cir. 6/5/13), 115 So.3d 1211, 1214–15, *writ denied*, 13-1934 (La.11/8/13), 125 So.3d 455 (quoting *Foster v. Rabalais Masonry, Inc.*, 01-1394, pp. 2-3 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied*, 02-1164 (La.6/14/02), 818 So.2d 784):
>
> > Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dep't. of*

*Corrections*, 93-1305 (La.2/28/94); 633 So.2d 129. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State*, 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Id.* Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

"The determination of coverage is a subjective one in that each case must be decided from all of its particular facts." *Jackson v. Am. Ins. Co.*, 404 So.2d 218, 220 (La.1981). "[T]he manifest error standard of appellate review applies in workers compensation cases and great deference is accorded to the [workers' compensation judge's] factual findings and reasonable evaluations of credibility." *Central Lumber Co. v. Duhon*, 03-620, p. 3 (La.App. 3 Cir. 11/12/03), 860 So.2d 591, 593, *writ denied*, 04-315 (quoting *Garner v. Sheats & Frazier*, 95-39, p. 7 (La.App. 3 Cir. 7/5/95), 663 So.2d 57, 61)[.]

### Assignment of Error Number One

In its first assignment of error, Dis-Tran argues that the WCJ erred in finding that Mr. Vaughn was entitled to workers' compensation benefits because he was intoxicated at the time of the accident. In support of its position Dis-Tran relies on the presumption of intoxication based on Mr. Vaughn's positive drug screen for Percocet as evidenced by the drug urine screen taken at the emergency room after the accident.

Dis-Tran's defense was based on the presumption of intoxication under La.R.S. 23:1081, which states in pertinent part:

(1) No compensation shall be allowed for an injury caused:

. . . .

(b) by the injured employee's intoxication at the time of the injury . . .

. . . .

(2) In determining whether or not an employer shall be exempt from and relieved of paying compensation because of injury sustained by an employee for any cause or reason set forth in this Subsection, the burden of proof shall be upon the employer.

(3) For purposes of proving intoxication, the employer may avail himself of the following presumptions:

. . . .

5) If there was, at the time of the accident, evidence of either on or off the job use of a nonprescribed controlled substance as defined in 21 U.S.C. 812, Schedules I, II, III, IV, and V, it shall be presumed that the employee was intoxicated.

(6) The foregoing provisions of this Section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question of whether the employee was under the influence of alcoholic beverages or any illegal or controlled substance.

Pursuant to 21 U.S.C. 812, Percocet, which is a brand name for the combination of oxycodone with acetaminophen, is a Schedule II drug. Thus, it would qualify as a controlled substance. However, the WCJ found in his oral reasons "since Mr. Vaughn was using a prescribed controlled substance, not a non-prescribed controlled substance, standing on the statute alone, DIS-TRAN Steel did not have a basis to assert a presumption of intoxication."

Dis-Tran argues that the WCJ failed to "shift the burden to Vaughn to rebut the presumption that his intoxication caused or contributed to the alleged incident." As previously stated, the WCJ found that Dis-Tran was not entitled to the presumption because based on the plain wording of the statute, it does not apply to a prescribed medication.

However, La.R.S. 23:1081(6) allows "the introduction of any other evidence bearing upon the question of whether the employee was under the influence of alcoholic beverages or any illegal or controlled substance."

The urine drug screen taken at the emergency room showed Mr. Vaughn with an oxycodone level of 4,003 nanograms per milliliter and an oxymorphone level of 2,651 nanograms per milliliter. Oxymorphone is a metabolite of oxycodone. Both parties presented experts to discuss the effects of long term prescription drug use by Mr. Vaughn.

The WCJ found that in his deposition taken October 19, 2016, a local occupational health doctor, Dr. Gordon Webb, reviewed Mr. Vaughn's urine drug screen, and "recognized that the urine had tested positive for [this] Percocet; nevertheless, he indicated that he assigned a negative result to the drug screen because Mr. Vaughn had produced a valid prescription for Percocet."

The WCJ also referenced Dr. Webb's October 19, 2016 deposition where he stated that, "Mr. Vaughn never denied that he had taken Percocet in the past." The apparent need for Mr. Vaughn's prescription for Percocet was for a back injury that occurred in 2006. Mr. Vaughn had been taking the medication since the 2006 injury, and "up to, before, and even after the incident with DIS-TRAN . . . on September 29, 2015."

In his deposition, Dr. Webb was asked, "An impairment is correlated easier with a test that shows levels of blood in the brain versus levels of a particular medication in urine; is that correct?" He replied, "I don't believe that any – that it is possible to make a correlation between impairment and levels period." He further stated, "If the person has been using for many, many years, they may show

essentially no impairment with a dose that would kill an average person taking it for the first time."

Finally, Mr. Vaughn's counsel asked Dr. Webb, "You can give no opinion nor do you believe it is possible to give an opinion that those levels can prove or disprove intoxication of Mr. Vaughn at the time of the accident; is that correct?" Dr. Webb replied, "That is correct."

In opposition to the testimony of Dr. Webb, Dis-Tran presented at trial the testimony of Dr. Nima Alinejad. After sending a number of medical records concerning Mr. Vaughn's drug urine screen to Dr. Alinejad, Dis-Tran received his report on January 6, 2017, approximately two months prior to trial. The WCJ found that Dr. Alinejad's report was the first time Dis-Tran "received any kind of information of any sort of expert that the level of Percocet or oxycodone in his bloodstream gave any indication of intoxication."

Although Dr. Alinejad referenced intoxication studies that were done on long term opioid users such as Mr. Vaughn in both his deposition and at trial, he never produced those studies to counsel for Mr. Vaughn. Dr. Alinejad testified about the side effects associated with Percocet and oxycodone, which included "slowness, confusion, and memory problems." Based on these side effects, Dis-Tran asserted, despite the lack of testimony as to what a normal reaction time would be for an individual not taking medication that, "supposedly somehow Mr. Vaughn was slow to react in getting out of the way" of the falling welding screen.

However, it is significant that during his testimony Dr. Alinejad did not render an opinion as to the "causation of the accident." Counsel for Mr. Vaughn questioned Dr. Alinejad on the issue at hand:

7

Q   So your opinion remains today the same as your opinion in your deposition which is you cannot comment on the cause of this accident we're here on today; correct?

A   Correct.

. . . .

Q   All right.  And my question to you is whether you agree with your deposition testimony, which is "I cannot comment on whether the accident would have happened or not if he was under the influence."

A.  Correct.

Further, in consideration of La.R.S. 23:1081(6), the WCJ extensively discussed the cases involving the defense of intoxication.  *Chelette v. Security Indus. Ins.*, 94-815, (La.App. 3 Cir. 12/7/94), 647 So.2d 469, involved a motor vehicle accident in which Mr. Chelette, like Mr. Vaughn, had a history of taking prescribed controlled substances.  The WCJ denied benefits because Mr. Chelette refilled a number of prescriptions just before the accident.  However, a panel of this court overturned the WCJ and granted Mr. Chelette compensation benefits.

In *Stenson v. Pat's of Henderson Seafood*, 11-1148, (La.App. 3 Cir. 2/1/12), 84 So.3d 661, *writ denied*, 12-504, (La. 4/13/12), 85 So.3d 1253, the WCJ found that because Xanax was a prescribed medication, it could not be the basis for an intoxication defense.  This court disagreed but found no error in the ultimate decision made by the WCJ, as the case also involved the use of marijuana, which was a non-prescribed controlled substance.  In that case, Ms. Stenson was walking around and tripped over a box of potatoes, fell and injured a wrist, which is different from the facts found by the WCJ concerning Mr. Vaughn's accident.  Here, the WCJ found that "Even if someone [could] conclude that the level of

8

substances found in Mr. Vaughn's urine somehow made him intoxicated," this incident happened "completely at the hands of Mr. Freeman, not Mr. Vaughn."

The WCJ further discussed the case of *Shaw Group v. Kulick*, 04-697, 04-698 (La.App. 1 Cir. 4/8/05), 915 So.2d 796, *writ denied*, 05-1205 (La. 11/28/05), 916 So.2d 148, in which there was a substance in the worker's system which could have allowed the application of the intoxication defense. In that case, a manhole cover fell over, injuring the worker's hips. The worker had not moved the manhole cover, he was simply walking by when it fell over and injured him. The district court granted the employer's summary judgment, which was reversed by a panel of the first circuit. The first circuit distinguished between using the intoxication defense when the claimant had caused the accident and using the defense when unforeseen incidents had occurred that were not connected to any of the claimant's behaviors. It determined that the worker could not "be required to anticipate unexpected and unseen falling objects." *Id*., at 802. Similarly, here the WCJ found that Mr. Vaughn had not done anything to cause the welding curtains to fall.

The WCJ then found:

[W]hen you consider that Mr. Vaughn -- and you have the testimony from all Mr. Vaughn's coworkers that there was nothing out of the -- usual about the way he was working that night or how he was performing. He's -- his work had been going through quality inspections all night. He was hearing this crane -- they had a lot of testimony about could he hear the crane, could he hear Mr. Freeman holler at him. And, you know, he's working in a production plant. I think all these workers in this plant are entitled to assume that all of their coworkers are going to be working safely. They're hearing these cranes operate all night. I don't think these production workers having to meet some kind of production schedule are stopping their work every time they hear a crane beeping and moving around.

We therefore find Dis-Tran's assignment of error number one to be without merit. The WCJ correctly determined that Dis-Tran was not entitled to the presumption of intoxication in La.R.S. 23:1081 because Mr. Vaughn had a valid prescription for the Percocet detected in his drug urine screen after the accident. Additionally, pursuant to La.R.S. 23:1081(6), the evidence presented by Dis-Tran failed to prove there was any impairment or intoxication on Mr. Vaughn's part that led to the accident in question or barred his receipt of workers' compensation benefits.

*Assignment of Error Number Two*

In its second assignment of error, Dis-Tran argues the WCJ erred in finding that Mr. Vaughn sustained a compensable work injury entitling him to benefits. In other words, Dis-Tran claims that Mr. Vaughn did not suffer a compensable injury in an accident that occurred during the course and scope of his work. The WCJ found as follows:

> Mr. Vaughn testified at trial that he was performing his production job working the night shift or the evening shift at DIS-TRAN Steel, some type of production outfit with some welding activities. And Mr. Vaughn began his employment there on September 19, 2014, as a welder. He testified he was doing his normal work that evening when he was struck on the head by a welding curtain which is a -- sort of fabric stretched -- canvas-like fabric stretched between a frame. Total weight of this object [is] about 20 to 25 pounds.

The WCJ also heard the testimony of Mr. Eric Freeman, the Dis-Tran crane operator "who was working in the same bay area as Mr. Vaughn separated by these—actually two welding curtains." The WCJ summarized Mr. Freeman's testimony:

> [T]hat he was lift[ing] his tubes to be welded or worked on with an overhead crane. He raised these above shoulder height, and there were actually two curtains. He had moved them, one next to each

10

other. They were so tall that Mr. Freeman could not see over the curtains, and that this object he had raised with the crane struck the curtains, and the curtains began to fall towards the area Mr. Vaughn was working in. Mr. Freeman said he grabbed these curtains with his free hand and was holding the curtains, and then he shouted, "Whoa." I interpreted his expression to be W-H-O-A, whoa, two times. He did turn loose of the curtains on that occasion. Mr. Vaughn testified he was struck. He ran out from -- from the area. This was corroborated by Mr. Freeman at trial as well as another gentleman at trial. I think that's Shuntaye Thomas, who was working that night.

Based on the foregoing, and upon the medical evidence discussed below, we find that the WCJ's factual findings that Mr. Vaughn suffered a corroborated, work-related, and compensable injury are reasonable. Therefore, we find Dis-Tran's assignment of error number two to be without merit.

*Assignment of Error Number Three*

In assignment of error number three, Dis-Tran argues that Mr. Vaughn has not established by clear and convincing evidence that he is unable to engage in any employment that supports his right to total disability benefits.

<u>*Medical History*</u>

Mr. Vaughn was taken to the emergency room at Rapides Medical Center, where he was seen by Dr. Donald A. Woolridge. Mr. Vaughn reported he had suffered a blow to the back of his head by a welding curtain. He stated he had a pain level of six out of ten, and a headache with dizziness. Mr. Vaughn underwent a CT scan of his head which showed "no evidence of an acute intracranial process." He also underwent a urine drug screen which is the basis of Dis-Tran's intoxication defense.

On October 7, 2015, seven days after the accident, Mr. Vaughn was seen at Christus St. Frances Cabrini Hospital. He maintained his complaint of headaches and sensitivity to light. He was diagnosed with post-concussive syndrome and

11

hypertension-uncontrolled. Mr. Vaughn was ordered not to return to work until October 9, 2015.

On October 8, 2015, Mr. Vaughn had his first appointment with Dr. Robert Smith of Home Town Doctors. Mr. Vaughn reported that he continued to suffer from headaches with no improvement. Dr. Smith reported that Mr. Vaughn appeared to be in pain and his headaches showed no improvement. He also documented that Mr. Vaughn had no history of headaches or trauma before the accident and prescribed medication.

Dr. Smith saw Mr. Vaughn on October 12, 2015, and on October 16, 2015, Dr. Smith's "Care Plan" stated:

> The patient continues to have headaches and complains of loss in appetite and nausea. The patient appears to have improved slightly but is not capable of working at this time. He has been recalcitrant to medications and continues to [have] Hypertension and severe relentless headaches. Dr. Smith is requesting a MRI of the Brain for further evaluation due to the headaches becoming relentless and loss of appetite. The patient will return for follow up appointment on Wednesday.

On October 21, 2015, Mr. Vaughn saw Dr. Smith for the requested follow-up appointment. Dr. Smith's "Care Plan" once again documents Mr. Vaughn's continuing headaches and stated: "[T]he patient continues to have headaches since the injury occurred. He has some good days and bad days. Despite taking the medications, he continues to have headaches with no relief. Dr. Smith is referring the patient to Neurology for further evaluation."

As stated in the Care Plan, on October 21, 2015, Dr. Smith referred Mr. Vaughn to a neurologist, Dr. Arsham Naalbandian. The record reflects that Dr. Smith's referral for Mr. Vaughn to see Dr. Naalbandian was authorized by Dis-Tran on February 26, 2016. However, it does not appear that Mr. Vaughn ever

actually saw Dr. Naalbandian as recommended by Dr. Smith. Dr. Smith continued to see Mr. Vaughn on November 4, 2015, December 28, 2015, and February 10, 2016. The record reflects that during these appointments Mr. Vaughn's complaints remained the same.

On April 12, 2016, Mr. Vaughn was sent by Dis-Tran to see a neurologist, Dr. Gerald J. Calegan. Dr. Calegan's initial examination of Mr. Vaughn resulted in his initial "Impression & Recommendations," which stated (emphasis added):

> Unfortunately, [I] do not have any medical records at this time, but clinically, **sounds like patient had a concussion, either with or without loss of consciousness**. I assume he had no major injuries, o he would likely have been admitted to the hospital. **He no doubt has postconcussive (sic) symptoms, consisting of headaches, memory loss, balance difficulty, sexual dysfunction and vertigo. Hopefully the symptoms will continue to improve, but some of these symptoms may be permanent.** I think patient needs detailed neuropsychological testing, to get a better idea for what he can and cannot do, also to rule out significant anxiety and mood disorders. For his headaches, I would like to prescribe a preventative medication, amitriptyline (which I'm also hopeful will help with his insomnia), and indomethacin for acute therapy. We talked about how to take these medications. We talked about the possible side effects. Of course, I need to see patient's medical records, especially verifying that he has had some type of brain imaging. If he has had a CT scan of head that was unremarkable, he may need MRI brain, which is way more sensitive for any type of brain lesion than CT scan. In the meantime, **because of headaches and cognitive difficulties, I do not think patient is cleared to work, at least until further testing is complete.**

After Mr. Vaughn left Dr. Calegan's office and after Dr. Calegan wrote his initial impressions and recommendations, Dr. Calegan found some of Mr. Vaughn's medical records that had not been in Mr. Vaughn's chart during the examination. Dr. Calegan's office also discovered "paperwork form Genex, requesting me to answer very specific questions." Dr. Calegan's impressions based on these additional records are documented in a "Consultation Report" dated April 4, 2016. His review of these additional records did not change Dr. Calegan's

ultimate diagnosis of "concussion without loss of consciousness." The medical records Dr. Calegan found and reviewed after he examined Mr. Vaughn confirmed that his diagnosis would be "concussion without loss of consciousness," based on the records of the ER. Further, Mr. Vaughn's CT scan of his head on September 29, 2015, was normal.

Dr. Calegan stated Mr. Vaughn had "no prior history of any neurologic symptoms before the accident." Therefore, since all of Mr. Vaughn's "symptoms occurred after the injury, **I think his current complaints are all due to his concussion that occurred on September 29, 2015. All the symptoms he describes are known and common post-concussive symptoms.**" (emphasis added).

Dr. Calegan once again recommended neuropsychological testing and based on the results of the testing, he thought Mr. Vaughn might "benefit from cognitive behavioral therapy." Dr. Calegan thought that Mr. Vaughn "could conceivably continue to improve in terms of his post-concussive symptoms," and did not require surgery at this time.

Dr. Calegan determined that Mr. Vaughn had "a moderate level of disability, with the understanding that [he did] not have a complete knowledge of [Mr. Vaughn's] cognitive limitations." However, he also stated that *if* Mr. Vaughn:

> does not have any significant cognitive impairment on neurological testing, he could conceivably return back to work, with the understanding that any type of work or exertion can trigger headaches, which could leave him unable to work in a presence of a headache, and these headaches would be for the most part unpredictable.

The WCJ correctly determined that during this period of time, Dis-Tran was not paying any indemnity benefits to Mr. Vaughn but could not determine if any of

14

Mr. Vaughn's medical bills had been paid because none of his bills had been introduced into evidence.

***Neurological Evaluations***

Mr. Vaughn was also evaluated on June 15, 2016, by Dr. James W. Quillin, a clinical medical psychologist, who was accepted as an expert in the fields of psychology and neuropsychology. Mr. Vaughn was referred to Dr. Quillin by his counsel based on the recommendation of Dr. Smith that he receive neuropsychological testing. In connection with an Independent Medical Evaluation (IME), Dis-Tran also referred Mr. Vaughn to a clinical neuropsychologist, Dr. Thomas E. Staats, who evaluated him on August 1 and 2, 2016, and subsequently issued an undated report.

There were conflicting opinions between the evaluations of Dr. Staats and Dr. Quillin. Dr. Quillin testified by deposition that he diagnosed Mr. Vaughn with post-concussive syndrome and recommended that he not return to work. Dr. Quillin further opined that Mr. Vaughn was not a malingerer and was truthful about his ongoing complaints. It was Dr. Quillin's opinion that Mr. Vaughn was depressed and the depression he was experiencing stemmed from his condition and his inability to work and earn an income after the on-the-job injury Mr. Vaughn sustained at Dis-Tran Steel, LLC.

Unlike Dr. Quillin, Dr. Staats determined—and stated in his report and in his deposition—that Mr. Vaughn was a malingerer with an unspecified depressive disorder who was "capable of returning to work as a welder from a psychological and neurological standpoint, preferably in full compliance with hypertensive and anti-depressant medications."

The WCJ placed greater weight on Dr. Quillin's opinions regarding the mental status of Mr. Vaughn. As the treating physician, Dr. Quillin had more contact with Mr. Vaughn on an ongoing basis as opposed to the single IME evaluation conducted by Dr. Staats.

In choosing to rely on Dr. Quillin's opinion, the WCJ found instructive the case of *Barbarin v. TLC Home Health*, 02-1054 (La.App. 5 Cir. 4/29/03), 845 So.2d 1199, which also involved post-concussion syndrome. In *Barbarin*, the IME neurologist found Ms. Barbarin might be a malingerer, and the defendants terminated her indemnity benefits. However, the WCJ found, after reviewing the recommendations of a neurologist chosen by Ms. Barbarin, that Ms. Barbarin's symptoms were consistent with those experienced by individuals with a concussion. The fifth circuit found the WCJ was not manifestly erroneous in finding that the claimant was temporally totally disabled. Likewise, the WCJ's findings and conclusions as to Mr. Vaughn's medical condition and resulting disability are well within his discretion.

### *Dis-Tran's Exhibit 27- Dr. Calegan's Supplemental Report*

Dis-Tran's Exhibit 27 consists of a January 27, 2017 letter to Dr. Calegan from Genex Services, LLC (Genex), and Dr. Calegan's response. As we discussed infra, Dr. Calegan, a neurologist, had previously examined Mr. Vaughn. The January 27, 2017 letter from Genex, apparently a claims servicing agency hired by Dis-Tran, contained a number of questions concerning Mr. Vaughn's medical history and condition and included the neuropsychological report of Dr. Staats. Dr. Calegan responded to the questions in a February 21, 2017 document, which is referred to by the WCJ in his oral reasons for ruling, as "some kind of

16

supplemental report from a doctor." Dr. Calegan's supplemental report is addressed to Ms. Keena Davis, Case Manager Genex.

Ultimately, the WCJ, in his oral reasons for ruling, properly gave no weight to the exhibit. Instead, he found that it was not "competent evidence" as defined by the supreme court in *Chaisson v. Cajun Bag & Supply Co.*, 97-1225, p. 13 (La. 3/4/98), 708 So.2d 375, 383:

> The Legislature in fashioning a relaxed evidentiary standard for worker's compensation proceedings envisioned the broad admission of evidence that might fall outside of the technical rules of evidence. . . . However, to ensure the reliability of the factual findings, the Legislature has mandated that the hearing officer's findings be based on "competent evidence."

Further, despite the more relaxed nature of a worker's compensation proceeding, "the rule concerning expert testimony is more stringent [.]" *Charles v. Lake Charles Mem'l Hosp.*, 06-1590, p.6 (La.App. 3 Cir. 5/30/07), 959 So.2d 571, 576, *writ denied*, 07-1607 (La. 10/26/07), 959 So.2d 571. In applying the "more stringent" rule, expert medical testimony may be admitted by:

> 1. certified medical records;
>
> 2. deposition;
>
> 3. oral examination in open court proceedings; however, no more than two physicians may present testimony for either party except by order of the judge;
>
> 4. any other manner provided by law.

La. Admin code. Tit. 40, pt. I, § 6209(A).

The WCJ correctly found that Dis-Tran's Exhibit 27 met none of these requirements for "competent evidence," as there was no deposition of Dr. Calegan, he did not testify at trial, and Exhibit 27 failed to meet the requirements for certified medical records as provided in La.R.S. 13:3715.1 (E):

17

E. The records shall be accompanied by the certificate of the health care provider or other qualified witness, stating in substance each of the following:

(1) That the copy is a true copy of all records described in the subpoena.

(2) That the records were prepared by the health care provider in the ordinary course of the business of the health care provider at or near the time of the act, condition, or event.

Accordingly, we find that the WCJ correctly determined that Dis-Tran's Exhibit 27 was not "competent evidence" and correctly afforded it no weight in his ruling.

In conclusion, the WCJ found in his oral reasons that:

Mr. Vaughn was certainly involved in an accident as defined by 23:1021, a sudden event happening with or without human fault. Here the fault is by Mr. Freeman, not Mr. Vaughn. The consistent evidence from Dr. Smith, Dr. Calegan, and Dr. Quillin [is] that Mr. Vaughn is incapable of working, the court believes Mr. Vaughn has proven by clear and convincing evidence with the assistance of this objective medical evidence that he's incapable of performing any work and is entitled to receive temporary total disability benefits from the last day he worked.

We agree and affirm the WCJ's ruling that Mr. Vaughn is entitled to temporary total disability benefits from September 29, 2015.

**Assignment of Error Number Four – Penalties and Attorney Fees**

In assignment of error number four, Dis-Tran argues the WCJ erred in awarding penalties and attorney fees to Mr. Vaughn, as Dis-Tran "reasonably controverted" Mr. Vaughn's claim for indemnity benefits.

A panel of this court clearly defined the basis for an award of penalties and attorney fees in *Landry v. Furniture Ctr.*, 05-643, p. 10 (La.App. 3 Cir. 1/11/06), 920 So.2d 304, 311, *writ denied*, 06-358 (La. 4/28/06), 927 So.2d 290:

Under La.R.S. 23:1201(F), a claimant in a workers' compensation claim has the burden of proving his entitlement to statutory penalties

for the employer's refusal or failure to timely pay workers' compensation benefits. To avoid the imposition of penalties and attorney fees, the employer and its insurer must provide factual and medical evidence to reasonably controvert a workers' compensation claim. *Bolton v. Mike Fleming Construction,* 36,521 (La.App. 2 Cir. 12/11/02), 833 So.2d 1177. The employer must have an "articulable and objective reason to deny benefits at the time it took the action." *Authement v. Shappert Engineering,* 02-1631 (La. 2/25/03), 840 So.2d 1181, 1188.

"Whether or not the employer is cast with attorney fees and penalties is a question of fact that will not be reversed on appeal absent manifest error." *Alpizar v. Dollar General*, 13-1150, p.13 (La.App. 3 Cir. 3/5/14), 134 So.3d 99, 108 (citation omitted) (quoting *Lambert v. Brookshire Grocery Co.*, 06-1001, p. 11 (La.App. 3 Cir. 12/20/06), 945 So.2d 918, 927).

The WCJ found that Mr. Vaughn was entitled to a $2,000 penalty for Dis-Tran's failure to pay any indemnity benefits. The WCJ was precluded from assessing penalties for Dis-Tran's failure to pay Mr. Vaughn's medical expenses as no record of these expenses was presented at trial. However, the WCJ did award a $2,000 penalty to Mr. Vaughn for Dis-Tran's failure to approve Dr. Smith's recommendation that Mr. Vaughn be referred to a neurologist. The WCJ found that Dr. Smith's recommendation for the referral was made on October 20, 2015. Dis-Tran responded to the request in February of 2016, which was clearly past the sixty-day requirement for approval of a medical referral pursuant to La.R.S.23:1201(E).[2] The WCJ also awarded $7,500 in attorney fees to Mr. Vaughn.

---

[2] It is well settled that the failure to authorize or pay for medical treatment equates to the failure to furnish benefits, which can subject an employer to penalties and attorney fees. *Authement v. Shappert Eng'g,* 02–1631 (La.2/25/03), 840 So.2d 1181. Pursuant to La.R.S. 23:1201(E), "Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof." *Romero v. Gran's, Inc.*, 13-482, p.3

In support of the award of penalties and attorney fees, the WCJ cited the supreme court case of *Brown v. Texas-La Cartage, Inc.*, 98-1063, p. 11 (La. 12/1/98), 721 So.2d 885, 891, which stated:

> As discussed above, penalties should be assessed against defendants unless the employer or insurer reasonably controverted Brown's right to the benefits or the violations resulted from conditions over which the employer or insurer had no control. Defendants do not claim, nor do the facts support the argument that the benefits were not timely paid for reasons beyond the employer's or insurer's control. Therefore, we must determine whether the employee's right to the timely and accurate payment of benefits was reasonably controverted by the employer or the insurer. We find that it was not.

In *Authement v. Shappert Eng'g*, 02-1631, p. 11 (La. 2/25/03), 840 So.2d 1181, 1188 (emphasis added), the supreme court went on to instruct:

> As stated in *Williams v. Rush Masonry, Inc.*, 98-2271 (La. 6/29/99), 737 So.2d 41, 46, awards of penalties and attorney fees in workers' compensation cases are essentially penal in nature. The purpose of imposition of penalties and attorney fees is to discourage indifference and **determining whether to impose penalties and attorney fees on an employer is whether the employer had an articulable and objective reason to deny benefits at the time it took action.**

In this case the WCJ emphasized the responsibility of Dis-Tran to articulate an objective reason "throughout the time they refused to pay." The WCJ found:

> The employer was well aware that Dr. Smith had indicated Mr. Vaughn was incapable of working. In April of 2016, they had information form Dr. Calegan that Mr. Vaughn was incapable of working. They had no medical information from any health care provider or any expert that at all indicating Mr. Vaughn was capable of working despite the testimony of Lori Patrick, the human resource person that had offered him a job sitting at a desk sorting through some schematics or some paperwork. All they had was this test positive for Percocet, but, according to the statute, it was not a non-prescribed substance; it was a prescribed substance.

---

(La.App.3 Cir. 8/6/14), 145 So.3d 1120, 1122-23. La.R.S. 23:1201(E) was amended effective August 1, 2013, but the substance of the statute was not changed.

20

Further, the WCJ stated in his oral reasons for ruling that Dis-Tran "had information from co-employees given from the investigation that took place that night and shortly thereafter that Mr. Vaughn was struck by this apparatus containing this welding curtain, that he had a head injury, that he'd received medical care."

The WCJ also found that Dis-Tran had nothing from any expert until they received Dr. Alinejad's opinion sometime after January 6, 2017, that "some kind of expert would be available to indicate that Mr. Vaughn was intoxicated." Considering Dis-Tran's defense of intoxication, a pending trial date of March 2, 2017, and the determination by the WCJ that Dis-Tran never did "take into consideration actually how this accident happened," the WCJ was not manifestly erroneous in his determination that Dis-Tran had no "articulable and objective reason to deny benefits at the time it took action." *Williams*, 737 So.2d at 46.

Based on the facts as determined by the WCJ, we find that the WCJ correctly ruled that Dis-Tran failed to "reasonably controvert" Mr. Vaughn's claim for indemnity benefits owed and failed to approve the recommendation of Dr. Smith for Mr. Vaughn's referral to a neurologist of his choice. We affirm the penalties and attorney fees imposed on Dis-Tran.

### Attorney Fees for Work Done on Appeal

Mr. Vaughn filed an answer and seeks an additional award of attorney fees for work done on appeal. "An increase in [attorney] fees is awarded on appeal when the defendant appeals, obtains no relief, and the appeal has necessitated more work on the part of the plaintiff's attorney, provided that the plaintiff requests such an increase." *McKelvey v. City of Dequincy*, 07-604, pp. 11-12 (La.App. 3 Cir. 11/14/07), 970 So.2d 682, 690. The record before this court reflects that Mr.

Vaughn's counsel requested such attorney fees, filed a brief in support of the judgment of the WCJ, and was successful in defending the judgment in its favor on appeal. We find, based on our review of the work done on appeal by counsel for Mr. Vaughn, that $5,000.00 would be a reasonable award for attorney's fees on appeal and order Dis-Tran Steel to pay that amount to Mr. Vaughn and his attorney.

## CONCLUSION

For the foregoing reasons, we affirm the May 23, 2017 judgment of the Workers' Compensation Judge in all respects. We also award attorney fees in the amount of $5,000 for work done on appeal in favor of plaintiff and against Dis-Tran Steel, LLC. All costs of this appeal are assessed to Dis-Tran Steel, LLC.

**AFFIRMED.**